Citation Nr: 1522715 
Decision Date: 05/29/15 Archive Date: 06/11/15

DOCKET NO. 13-30 709 ) DATE
 )
 )

On appeal from the
Department of Veterans Affairs Regional Office in Oakland, California


THE ISSUES

1. Entitlement to service connection for right leg shin splints.

2. Entitlement to service connection for a right knee disability.

3. Entitlement to service connection for a lumbar spine disability.

4. Entitlement to service connection for an eye disability manifested by infections.

5. Entitlement to service connection for an upper respiratory disability.

6. Entitlement to service connection for bilateral hearing loss disability.

7. Entitlement to service connection for tinnitus.

8. Entitlement to service connection for a disability manifested by renal insufficiency.

9. Entitlement to service connection for hypertension.

10. Entitlement to a compensable rating for a right ankle disability.

11. Entitlement to a compensable rating for left leg shin splints.

12. Entitlement to a 10 percent rating under 38 C.F.R. § 3.324.


REPRESENTATION

Appellant represented by: California Department of Veterans Affairs


ATTORNEY FOR THE BOARD

M. Young, Counsel


INTRODUCTION

The appellant is a Veteran who served on active duty from July 1977 to September 1980 and from June 1984 to December 1985. These matters are before the Board of Veterans' Appeals (Board) on appeal from a March 2011 rating decision of the Oakland, California Department of Veterans Affairs (VA) Regional Office (RO).

The issues of service connection for a right knee disability, a lumbar spine disability, a disability manifested by eye infections, an upper respiratory disability, tinnitus, a disability manifested by renal insufficiency, and hypertension, and entitlement to compensable ratings for right ankle and left leg shin splint disabilities or to a 10 percent rating under 38 C.F.R. § 3.324 are REMANDED to the Agency of Original Jurisdiction (AOJ). VA will notify the Veteran if action on his part is required.

FINDINGS OF FACT

1. Right leg shin splints are reasonably shown to have been incurred in service.

2. The Veteran is not shown to have a hearing loss disability in either ear.


CONCLUSIONS OF LAW

1. Service connection for right leg shin splints is warranted. 38 U.S.C.A. §§ 1131, 5107 (West 2014); 38 C.F.R. §§ 3.102, 3.303 (2014).

2. Service connection for bilateral hearing loss disability is not warranted. 38 U.S.C.A. §§ 1131, 1137 (West 2014); 38 C.F.R. §§ 3.102, 3.303 (2014). 


REASONS AND BASES FOR FINDINGS AND CONCLUSIONS

Veterans Claims Assistance Act of 2000 (VCAA)

The VCAA, in part, describes VA's duties to notify and assist claimants in substantiating a claim for VA benefits. 38 U.S.C.A. §§ 5100, 5102, 5103, 5103A, 5106, 5107, 5126; 38 C.F.R. §§ 3.102, 3.156(a), 3.159, 3.326(a). Upon receipt of an application for VA benefits VA is required to notify the claimant and representative of any information and any medical or lay evidence, not of record (1) that is necessary to substantiate the claim; (2) that VA will seek to provide; and (3) that the claimant is expected to provide. It applies to the claims being decided. 

Regarding the claim of service connection for right leg shin splints, as the benefit sought is being granted, there is no reason to belabor the impact of the VCAA on the matter, as any notice or duty to assist omission is harmless. 

Regarding the claim of service connection for bilateral hearing loss, the Veteran was provided VCAA-compliant notice by a letter in March 2010. VA has secured all pertinent records (it is not alleged that the identified outstanding 1992-1998 private treatment records sought in the remand below show a current hearing loss disability) and arranged for an adequate VA examination. VA's duty to assist is met. A VCAA-mandated notice or duty to assist omission is not alleged. 

Legal Criteria, Factual Background, and Analysis

Service connection may be granted for a disability resulting from a disease or injury incurred in or aggravated by service. See 38 U.S.C.A. § 1131; 38 C.F.R. § 3.303(a). In order to establish service connection for a claimed disability, there must be evidence of (1) a current disability (for which service connection is sought); (2) incurrence or aggravation of a disease or injury in service; and (3) a causal connection between the disease or injury in service and the current disability. See Shedden v. Principi, 381 F.3d 1163 (Fed. Cir. 2004). 

Service connection may be established by showing continuity of symptomatology after discharge. 38 C.F.R. § 3.303(b). A disability first diagnosed after discharge may nonetheless be service connected if the evidence establishes that it was incurred in service. 38 C.F.R. § 3.303(d); Combee v. Brown, 34 F.3d 1039, 1043 (Fed. Cir. 1994). 

Competent medical evidence is evidence provided by a person who is qualified through education, training, or experience to offer medical diagnoses, statements, or opinions. Competent medical evidence may include statements conveying sound medical principles found in medical treatises. Competent medical evidence may include statements contained in authoritative writings, such as medical and scientific articles and research reports or analyses. 38 C.F.R. § 3.159(a)(1).

Competent lay evidence is any evidence not requiring that the proponent have specialized education, training, or experience. Lay evidence is competent if it is provided by a person who has knowledge of facts or circumstances and conveys matters that can be observed and described by a lay person. 38 C.F.R. § 3.159(a)(2). This may include some medical matters, such as describing symptoms or relating a contemporaneous medical diagnosis. Jandreau v. Nicholson, 492 F.3d 1372 (Fed. Cir. 2007).

When there is an approximate balance of positive and negative evidence regarding the merits of an issue, the benefit of the doubt shall be given to the claimant. 38 U.S.C.A. § 5107(b); 38 C.F.R. § 3.102. If the preponderance of the evidence is against the claim, the claim is to be denied. Gilbert v. Derwinski, 1 Vet. App. 49, 55 (1990).

The Board notes that it has reviewed all evidence in the record. Although the Board has a requirement to provide reasons and bases supporting its decision, there is no need to discuss every piece of evidence. Gonzales v. West, 218 F.3d 1378, 1380-81 (Fed. Cir. 2000). Hence, the Board will summarize the relevant evidence as deemed appropriate, and the Board's analysis will focus specifically on what the evidence shows, or fails to show, as to the claims on appeal.

Hearing Loss 

The Veteran claims that on service separation examination he was told that he has some hearing loss. He attributes his claimed hearing loss to noise trauma from serving on an aircraft carrier. 

Hearing loss disability is defined in 38 C.F.R. § 3.385. The diagnosis is established based on findings on controlled audiometry (consisting of puretone thresholds at the 500, 1000, 2000, 3000, and 4000 hertz frequencies and speech discrimination testing using the Maryland CNC list), and is evidenced when the puretone threshold in any of those frequencies is 40 decibels or greater, when puretone thresholds in 3 of the frequencies are 26 decibels or greater, or when the speech discrimination score is less than 94 percent. 

A hearing loss disability was not noted in service. On examination in conjunction with the Veteran's application for participation in a "Boost" training program in November 1978, he was found to have an elevated puretone threshold at a pertinent frequency (35 decibels at 500 hertz in the left ear); He was also found to have a 40 decibel puretone threshold at 6000 hertz (a high frequency not for consideration) in the right ear. However, on October 1985 service separation examination puretone thresholds at all frequencies tested were all 25 decibels or less (and less than 25 decibels at the 500-4000 hertz frequencies).

The Veteran has not submitted (or identified for VA to secure) any postservice audiometry showing a hearing loss disability. In connection with the instant claim he was scheduled for a VA audiological evaluation. On that evaluation (in September 2010) audiometry revealed that right ear puretone thresholds at the 500, 1000, 2000, 3000, and 4000 hertz frequencies were 15, 30, 20, 20 and 25 decibels, respectively; at corresponding frequencies left ear puretone thresholds were 15, 30, 20, 15, and 30 decibels, respectively. Speech recognition in each ear was 100 percent. 

A veteran is entitled to compensation (service connection) for service connected disability only when disease or injury has resulted in a disability. See Brammer v. Derwinski, 2 Vet. App.223 (1992). There is no evidence that the Veteran has (during the pendency of the instant claim has had) a hearing loss disability in either ear. The findings on September 2010 VA audiometry do not reflect a hearing loss disability (as defined in 38 C.F.R. § 3.385) in either ear. Accordingly, the veteran has not presented a valid claim of service connection for such disability, and his appeal in the matter must be denied. 

Right Leg Shin Splints

The Veteran contends, in essence, that had shin splints in both lower extremities on active duty, but that after he was told that nothing could be done for his left leg shin splints in service he did not present for treatment of right leg shin splints therein, as that would have been pointless. 

The Veteran's STRs note a January 1980 diagnosis of left leg strain, following his complaints of left shin pain of four days duration. He reported that he had participated in a running and physical training program (Boost). On August 1980 and October 1985, the lower extremities were noted to be normal on clinical evaluation. 

On September 2010 VA examination, the Veteran asserted that running on pavement in service caused his shin splints. He reported pain, fatigability, and weakness. The diagnosis was bilateral shin splints. The examiner opined that the bilateral shin splints were likely related to the shin splints the Veteran experienced in service, explaining that shin splints were caused by injury to shins from running (and subject to exacerbation from stress fractures).

In a July 2012 written statement, the Veteran noted that he has had leg problems since his discharge from service in 1985.

The Board finds the September 2010 VA examiner's opinion to be probative (and persuasive) evidence regarding the etiology of the Veteran's right leg shin splints. The AOJ has denied this claim on the basis that right leg shin splints were not noted in service. However, the Board finds plausible and credible the Veteran's account that he had shin splints in both legs during service, but did not pursue treatment for the right leg because seeking relief for the left leg complaints proved to be fruitless. Resolving remaining reasonable doubt in the Veteran's favor, as required (see 38 U.S.C.A. § 5107; 38 C.F.R. § 3.102), the Board finds that the evidence reasonably shows that his right leg shin splints were incurred in service and that service connection for such disability is warranted.


ORDER

The appeal seeking service connection for right leg shin splint is granted.

The appeal seeking service connection for bilateral hearing loss is denied. 




REMAND

While the notice provisions of the VCAA appear to be satisfied, the Board finds that further development of the record is required to satisfy VA's duty to assist the Veteran with respect to the remaining claims on appeal.

At the outset, the Board notes that in October 2011 and June 2012 correspondence, the Veteran requested that 1992 to 1998 private treatment records from Sutter North Medical Clinic, Marysville, California be obtained. Records of such treatment are not associated with the record, and do not appear to have been sought. Such records are potentially pertinent to the remaining claims, and must be secured.

Further, regarding service connection for a disability manifested by eye infections, the Veteran's STRs note he was seen with a complaint of left eye irritation possibly associated with contact lens use. A left eye corneal abrasion of the was noted. The diagnosis was inferior corneal abrasion. The next day he was seen for follow-up, and indicated the eye was much better. The assessment was resolving corneal abrasion. After service, in August 1986, the Veteran was seen by a private provider for right eye complications from continuous contact use. In October 2002 he was seen by a private provider with complaints of a left eye irritation. He reported he scratched his left eye taking out a contact lens; the eye was red and irritated. On follow-up on the next day, there was no pain in the left eye. In August 2003 he was again seen for left eye pain, itching and drainage. There was no problem with the right eye. The left eyelid was swollen and red. The diagnoses were left eye conjunctivitis and blepharitis.

Regarding service connection for an upper respiratory disorder, a September 1979 STR notes the Veteran complained of sore throat, drippy congestion and an unproductive cough of 3 days duration. The diagnosis was upper respiratory infection. Following service, in March 1999, he was seen by a private provider for complaints of congestion and cough; the diagnosis was sinusitis. An April 1999 private treatment report notes complaints of recurrent cold, congestion and sore throat. The diagnosis was upper respiratory infection with cough. In April 2001, after a week of nasal drainage and pressure in the sinuses with purulent nasal drainage and tenderness, an acute sinus infection was diagnosed. In February 2002 upper respiratory infection with some mild sinusitis and early bronchitis was diagnosed.

A private medical statement submitted by the Veteran appears to relate his diagnosis of Focal Segmental Glomerulonecrosis to complaints of lower extremity swelling in service. Service treatment records show what appear to be borderline elevated blood pressure readings therein (140/72 (sitting) 128/92 (standing) in 1079). He states he was treated for hypertension by a private provider 1986. A November 2004 postservice private treatment report notes his blood pressure was elevated (150/98, and 150/88 on repeat on repeat testing). The diagnosis was hypertension. A September 2008 private clinic note shows a diagnosis of hypertension; the Veteran's blood pressure was 156/98. The VA audiologist's opinion against the Veteran's claim of service connection for tinnitus does not acknowledge his accounts of onset in service. Notably, the private treatment records cited above may contain information pertinent to these claims.

The Veteran has not been afforded a VA examination in connection with his claims of service connection for left eye, upper respiratory, kidney and hypertension (or an adequate examination with respect to tinnitus). The Board finds that the low threshold standard for determining when VA is obligated to provide an adequate examination/nexus opinion is met. See McLendon v. Nicholson, 20 Vet. App. 79 (2006). A remand for appropriate examination(s) of the Veteran is indicated.

Increased Rating Claims

Regarding the ratings for right ankle and bilateral shin splint disabilities, the Veteran was last afforded VA examinations to assess such disabilities in September 2010. In June 2012 correspondence, he asserted that his ankle and leg disabilities have worsened. In light of the intervening time period and the allegation of worsening, a contemporaneous examination is necessary. See Snuffer v. Gober, 10 Vet. App. 400 (1997).

The issue of entitlement to a 10 percent rating under 38 C.F.R. § 3.324, is dependent on evidence that at least 2 service connected disabilities impact on employability, and is inextricably intertwined with the ratings for right ankle and bilateral shin splint disabilities (a compensable rating for any would render the matter moot). See Harris v. Derwinski, 1 Vet. App. 180, 183 (1991). Consequently, consideration of the 38 C.F.R. § 3.324 claim must be deferred pending resolution of the other matters.

Accordingly, the case is REMANDED for the following action:

1. The AOJ should ask the Veteran to identify, and provide releases for VA to obtain complete records of, all providers of his private treatment for the claimed disabilities, specifically including 1992 to 1998 records from Sutter North Medical Clinic). The AOJ should secure complete records from all providers identified. If any records sought are unavailable, the reason should be noted, and the Veteran should be so notified, and advised that ultimately it is his responsibility to ensure that private records are received.

2. Then, the AOJ should arrange for the Veteran to be examined by an ophthalmologist to determine the nature and likely etiology of any eye disability the Veteran may now have, and specifically whether it is related to left eye irritation and or corneal abrasion in service. The entire record, to include this remand, must be reviewed by the examiner in conjunction with the examination, and any tests or studies indicated must be completed. The examiner should note all symptoms and pathology found. Based on a review of the entire record and examination of the Veteran, the examiner should provide opinions that respond to the following: 

(a) Please identify (by diagnosis) each eye disability entity/ all eye pathology found.

(b) Please identify the likely etiology for each eye disability entity diagnosed. Specifically, is it at least as likely as not (a 50% or greater probability) that it is related to an incident/injury in service?

The examiner must include rationale with all opinions. 

3. The AOJ should arrange for the Veteran to be examined by an appropriate physician to determine the nature and likely etiology of any upper respiratory disability he may have . The entire record, to include this remand, must be reviewed by the examiner. All indicated tests or studies should be completed. Based on review of the record, and examination of the Veteran, the examiner should provide opinions that respond to the following:

(a) Please identify by diagnosis each chronic upper respiratory disability found? If none is diagnosed, the examiner must reconcile that determination with the private treatment records noting diagnoses of sinusitis, acute sinus infection, and upper respiratory infection with mild sinusitis and early bronchitis. 

(b) Please identify the likely etiology of each upper respiratory disability diagnosed. Specifically, is it at least as likely as not (a 50% or greater probability) that it had its onset in service/is related to complaints noted therein? If not, identify the etiology considered more likely.

The examiner should include rationale with all opinions.

4. The AOJ should likewise arrange for the Veteran to be examined by an appropriate physician (nephrologist/ internist/cardiologist) to determine the likely etiology of his kidney disorder and hypertension. The entire record, to include this remand, must be reviewed by the examiner in conjunction with the examination. Based on review of the record and examination of the Veteran, the examiner should provide an opinion that identifies the likely etiology for the Veteran's hypertension and kidney disorder? Specifically, is it at least as likely as not (a 50% or greater probability) that the hypertension is related to his service to include the borderline elevated blood pressure on September 1979 examination in service or that the kidney disorder is related to complaints of lower extremity swelling in service?

The examiner should include rationale with all opinions.

5. The AOJ should arrange for an orthopedic examination of the Veteran to ascertain the current severity of his service-connected right ankle and bilateral shin splint disabilities. The entire record, including this remand, must be reviewed by the examiner in conjunction with the examination(s). Any indicated tests or studies (specifically including range of motion studies) should be completed. The examiner(s) should specifically note whether there are further functional limitations due to pain, weakness, fatigue and/or incoordination, and the impact such disabilities have on employability. 

The examiner must include rationale with all opinions.

6. The AOJ should also arrange for the Veteran to be examined by an audiologist or otologist to determine the etiology of his tinnitus. The examiner must specifically acknowledge the Veteran's allegations that he first noticed tinnitus in service.

7 The AOJ should then review the record, arrange for any further development indicated (e.g., nexus examinations if suggested by additional records received) and readjudicate the remaining claims (entitlement to a 10 percent rating under 38 C.F.R. §3.324 following processing of the award of service connection for right leg shin splints and determinations on the ratings for the other service connected disabilities). If any remains denied, the AOJ should issue an appropriate supplemental statement of the case and afford the Veteran and his representative an opportunity to respond before the record is returned to the Board.

The appellant has the right to submit additional evidence and argument on the matters the Board has remanded. Kutscherousky v. West, 12 Vet. App. 369 (1999). These claims must be afforded expeditious treatment. The law requires that all claims that are remanded by the Board for additional development or other appropriate action must be handled in an expeditious manner. See 38 U.S.C.A. §§ 5109B, 7112 (West 2014).


______________________________________________
George R. Senyk
Veterans Law Judge, Board of Veterans' Appeals



Department of Veterans Affairs