Citation Nr: 1533651 
Decision Date: 08/06/15 Archive Date: 08/20/15

DOCKET NO. 05-17 849 ) DATE
 )
 )

On appeal from the
Department of Veterans Affairs (VA) Regional Office (RO) in Philadelphia, Pennsylvania


THE ISSUES

1. Entitlement to service connection for a right ankle disability, to include as secondary to a service-connected disability.

2. Entitlement to service connection for a left ankle disability, to include as secondary to a service-connected disability.

3. Entitlement to service connection for a right knee disability, to include as secondary to a service-connected disability.

4. Entitlement to service connection for a cervical spine disability, to include as secondary to a service-connected disability.


REPRESENTATION

Appellant represented by: The American Legion

WITNESSES AT HEARING ON APPEAL

Appellant and friend


ATTORNEY FOR THE BOARD

D. Schechner, Counsel


INTRODUCTION

The appellant is a Veteran who served on active duty from May 1986 to August 1996. These matters are before the Board of Veterans' Appeals (Board) on appeal from a June 2002 rating decision by the Philadelphia, Pennsylvania RO. In September 2009, May 2011 and August 2012, the matters were remanded for additional development. In November 2005, a hearing was held before a Decision Review Officer at the RO. In May 2015, a Travel Board hearing was held before the undersigned. Transcripts of both hearings are in the record. At the Travel Board hearing the Veteran requested, and was granted, a 60 day abeyance period for the submission of additional evidence; the abeyance period has lapsed and no additional evidence was received.

The issues of service connection for a left ankle disability and a cervical spine disability are being REMANDED to the Agency of Original Jurisdiction (AOJ). VA will notify the appellant if action on his part is required.


FINDINGS OF FACT

1. A chronic right ankle disability was not manifested in service; arthritis of the right ankle was not manifested within one year following the Veteran's separation from service; and a right ankle disability is not shown to be related to his service or to (caused or aggravated by) his service connected pes planus.
2. A chronic right knee disability was not manifested in service; arthritis of the right knee was not manifested within one year following the Veteran's separation from service; and a right knee disability is not shown to be related to his service or to (caused or aggravated by) his service connected pes planus.


CONCLUSIONS OF LAW

1. Service connection for a right ankle disability, to include as secondary to a service-connected disability, is not warranted. 38 U.S.C.A. §§ 1110, 1131, 5107 (West 2014); 38 C.F.R. §§ 3.303, 3.304, 3.307, 3.309, 3.310 (2014).

2. Service connection for a right knee disability, to include as secondary to a service-connected disability, is not warranted. 38 U.S.C.A. §§ 1110, 1131, 5107 (West 2014); 38 C.F.R. §§ 3.303, 3.304, 3.307, 3.309, 3.310 (2014).


REASONS AND BASES FOR FINDINGS AND CONCLUSIONS

Veterans Claims Assistance Act of 2000 (VCAA)

The requirements of 38 U.S.C.A. §§ 5103 and 5103A (West 2014) have been met. By correspondence dated in June 2000, January 2001, and October 2009, VA notified the Veteran of the information needed to substantiate and complete his claims, to include notice of the information that he was responsible for providing and of the evidence that VA would attempt to obtain, and how VA assigns disability ratings and effective dates of awards. It is not alleged that notice was less than adequate. Notably, during the May 2015 Travel Board hearing, the undersigned advised the Veteran of what is still needed to substantiate the claims (evidence of a nexus between the claimed disabilities and his service/service-connected disabilities); the Veteran's testimony reflects that he is aware of what remains needed to substantiate his claims.

The Veteran's service treatment records (STRs) and pertinent postservice treatment records have been secured. The RO arranged for VA examinations in December 2000 and January 2010, with a June 2011 addendum opinion, which the Board finds to be (cumulatively) adequate for reasons that will be discussed below. See Barr v. Nicholson, 21 Vet. App. 303 (2007). VA's duty to assist is met. 

Legal Criteria, Factual Background, and Analysis

The Board notes that it has reviewed all of the evidence in the Veteran's claims file, with an emphasis on the evidence relevant to this appeal. Although the Board has an obligation to provide reasons and bases supporting its decision, there is no need to discuss, in detail, every piece of evidence. Gonzales v. West, 218 F.3d 1378, 1380-81 (Fed. Cir. 2000). Hence, the Board will summarize the relevant evidence, as appropriate, and the analysis will focus specifically on what the evidence shows, or does not show, as to the claims. 

Service connection may be granted for a disability resulting from a disease or injury incurred in or aggravated by service. See 38 U.S.C.A. §§ 1110, 1131; 38 C.F.R. § 3.303(a). To establish service connection for a claimed disability, there must be evidence of: (1) a current disability for which service connection is claimed; (2) incurrence or aggravation of a disease or injury in service; and (3) a causal connection between the disease or injury in service and the current claimed disability. See Shedden v. Principi, 381 F.3d 1163 (Fed. Cir. 2004).

A disability first diagnosed after discharge may be service connected if all the evidence establishes that it was incurred in service. 38 C.F.R. § 3.303(d); Combee v. Brown, 34 F.3d 1039, 1043 (Fed. Cir. 1994). 

Certain chronic disabilities (including arthritis) may be service-connected on a presumptive basis if manifested in a specified period of time following a veteran's discharge from active duty (one year for arthritis). 38 U.S.C.A. §§ 1112, 1137; 38 C.F.R. §§ 3.307, 3.309. 

Lay evidence may be competent evidence to establish incurrence. See Davidson v. Shinseki, 581 F. 3d 1313 (Fed. Cir. 2009). Lay evidence can be competent and sufficient to establish a diagnosis of a condition when (1) a layperson is competent to identify the medical condition, (e.g., a broken leg), (2) the layperson is reporting a contemporaneous medical diagnosis, or (3) lay testimony describing symptoms at the time supports a later diagnosis by a medical professional. Jandreau v. Nicholson, 492 F.3d 1372 (Fed. Cir. 2007). Competent medical evidence is needed where the determinative question is one requiring medical knowledge. Id.

Competent medical evidence means evidence provided by a person who is qualified through education, training, or experience to offer medical diagnoses, statements, or opinions. It may also mean statements conveying sound medical principles found in medical treatises, and may include statements in authoritative writings, such as medical and scientific articles and research reports. 38 C.F.R. § 3.159(a)(1). Competent lay evidence means any evidence not requiring that the proponent have specialized education, training, or experience. Lay evidence is competent if it is provided by a person who has knowledge of facts or circumstances and conveys matters that can be observed and described by a layperson. 38 C.F.R. § 3.159(a)(2).

Disability which is proximately due to or the result of a service-connected disease or injury shall be service connected. 38 C.F.R. § 3.310(a) (as in effect before and after October 10, 2006). 

Any increase in severity of a nonservice-connected disease or injury that is proximately due to or the result of a service-connected disease, will be service connected. However, VA will not concede that a non-service-connected disease or injury was aggravated by a service-connected disease or injury unless the baseline level of severity of the nonservice-connected disease or injury is established by medical evidence created before the onset of aggravation or by the earliest medical evidence created at any time between the onset of aggravation and the receipt of medical evidence establishing the current level of severity of the nonservice-connected disease or injury. The rating activity will determine the baseline and current levels of severity under the Schedule for Rating Disabilities and determine the extent of aggravation by deducting the baseline level of severity, as well as any increase in severity due to the natural progress of the disease, from the current level. 38 C.F.R. § 3.310 (b).

The Veteran's primary theory of entitlement to the benefits sought is essentially one of secondary service connection. Service connection has been established for lumbosacral strain, right shoulder strain, bilateral pes planus, and removal of a right hand cyst from the. 

Right ankle disability

The Veteran alleges that he has a right ankle disability that is secondary to his service connected bilateral pes planus.

The Veteran's STRs are silent for complaints, findings, treatment, or diagnosis regarding the right ankle. In a July 1996 report of medical history on separation from service, he denied a history of bone, joint or other deformity.

On December 2000 VA examination, the Veteran complained that his ankles hurt all the time. Following a physical examination, the impressions included chronic right ankle strain as a result of morbid obesity.

On January 2010 VA examination, it was noted that there was no documentation of a complaint of ankle pain in the STRs or in records of April 2000 to March 2006 postservice treatment. On current examination, the Veteran reported constant pain in the ankle, which he reported began in service in 1986 or 1987. X-rays of the right ankle did not show degenerative joint disease (DJD). Following a physical examination, the diagnosis was chronic ankle strain. The examiner noted that when standing, the Veteran had very minimal pes planus. The examiner opined that it is more likely than not that the Veteran's chronic ankle strain is related to other factors other than his bilateral pes planus and is more likely than not related to his morbid obesity. The examiner again noted the absence of documentation of any chronic ankle condition in the multiple notes of postservice treatment in the record.

In a June 2011 addendum opinion, the January 2010 VA examiner opined that it is less likely than not that any currently diagnosed right ankle disorder, including right ankle strain, had its onset during service or was otherwise caused by any incident that occurred during the Veteran's period of military service. The examiner opined that it is less likely than not that the Veteran's service-connected pes planus is the cause of any currently diagnosed right ankle disorder, including right ankle strain. The examiner opined that it is less likely than not that the Veteran's pes planus caused a worsening of any currently diagnosed right ankle disorder, including right ankle strain, beyond the natural progress of that disorder. For rationale, the examiner referred to the January 2010 examination report.

The medical evidence is otherwise silent regarding a right ankle disability.

At the May 2015 Board hearing, the Veteran testified that he has had chronic ankle strain diagnosed. He testified that he was told by foot doctors that when the arch of the foot goes flat, it affects the angle at which the ankle attaches to the foot, which impacts the knees, hips, and back as well; he believes this to be the cause of his ankle pain.

Arthritis is a chronic disease listed under 38 C.F.R. § 3.309(a). As the Veteran is not currently shown to have arthritis of the right ankle, the provisions regarding chronicity and continuity under 38 C.F.R. § 3.303(b) need not be addressed. 

The Veteran has not specifically contended that he has had right ankle symptoms continuously since service. The preponderance of the evidence is against a finding that a current chronic right ankle disability was incurred in service. His STRs are silent for complaints or findings regarding the right ankle; on July 1996 separation examination, he did not report a right ankle disability and such disability was not noted.

The postservice medical evidence of record does not show complaints or treatment for the right ankle until 2000, or not until approximately 4 years after the Veteran's separation from service. While this alone is not determinative or dispositive of whether he had a right ankle disability during the intervening years following service, it is nonetheless probative evidence tending to refute such notion. Consequently, service connection for a right ankle disability on the basis that it became manifest in service and persisted is not warranted. It is not alleged otherwise.

Postservice evaluation/treatment records provide no indication that a right ankle disability may somehow be directly related to the Veteran's service. Accordingly, service connection for a right ankle disability on the basis that it was incurred or aggravated in service is not warranted. 

Regarding the Veteran's secondary service connection theory of entitlement, the January 2010 and June 2011 VA medical opinions, which the Board has found adequate and probative, indicate that his pes planus did not cause or aggravate his right ankle disability. Because there is no competent (medical opinion/treatise) evidence to the contrary, the Board finds the VA opinions to be persuasive. Notably, the provider cited to supporting factual data (that the pes planus was mild) and cited to alternate etiology for the ankle disability considered more likely, i.e., the Veteran's morbid obesity. While the Veteran has stated that a podiatrist related his ankle disability to his pes planus, the record does not include such opinion; the Veteran has not submitted such evidence during the abeyance period offered. The question of whether a disease such as pes planus causes or aggravates another disability (such as chronic ankle strain) is one that is medical in nature, beyond the realm of lay observation; it requires medical expertise. Consequently, the Veteran's own opinions in this matter are not competent evidence. See Routen v. Brown, 10 Vet. App. 183, 186 (1997); Jandreau v. Nicholson, 492 F. 3d 1372 (Fed Cir. 2007). 

In light of the foregoing, the Board concludes that the preponderance of the evidence is against the Veteran's claim of service connection for a right ankle disability. Accordingly, it must be denied.

Right knee disability

The Veteran alleges that he has a right knee disability secondary to his service-connected pes planus. 
The Veteran's STRs are silent for complaints, findings, treatment, or diagnosis regarding the right knee. In a July 1996 report of medical history on separation from service, the Veteran denied any history of "trick" or locked knee, or any bone, joint or other deformity.

On December 2000 VA examination, the Veteran complained of right knee pain. Following a physical examination, the impressions included strain of the right knee with a normal X-ray of the knee.

On January 2010 VA examination, the examiner noted there was no documentation that the Veteran complained of a right knee condition on active duty. The Veteran reported that he had not had any treatment for the right knee. The examiner noted a history of left knee surgery prior to service and noted that meniscus removal does cause altered weightbearing mechanics in the affected knee. The examiner opined that at least some component of the Veteran's right knee disability is just as likely as not to be related to the prior left knee non-service connected surgery with meniscectomy. The examiner noted the Veteran's weight of 400 pounds and further opined that, independent of any other factor, severe morbid obesity will produce chronic knee strain. The examiner found no mention of a right knee condition on initial postservice treatment in April 2000 and no mention of a right knee disability in reports of intervening primary care treatment. On current examination, the Veteran reported intermittent right knee pain. X-rays showed right knee DJD. Following a physical examination, the diagnosis was chronic right knee strain. Given the absence of documentation of any ongoing right knee condition (despite opportunities for such during primary care through the years), the examiner opined that it is more likely than not that the chronic right knee strain is not related to the Veteran's service-connected pes planus, but it is more likely than not to be related to other factors, especially morbid obesity.

In a June 2011 addendum opinion, the January 2010 VA examiner opined that it is less likely than not that the Veteran's right knee strain had its onset during service or was otherwise caused by any incident during military service. The examiner further opined that it is less likely than not that the Veteran's service-connected pes planus is the cause of any currently diagnosed right knee disorder. The examiner opined that the service-connected pes planus less likely than not caused any worsening of the currently diagnosed right knee disorder, including right knee strain, beyond the natural progress of the disorder. For rationale, the examiner referred to the January 2010 examination report.

The medical evidence is otherwise silent regarding a right knee disability.

At the May 2015 Board hearing, the Veteran testified that was told by foot doctors that when the arch of the foot goes flat, it affects the angle at which the ankle attaches to the foot, which impacts the knees, hips, and back as well; he believes this to be the cause of his knee pain.

The preponderance of the evidence is against a finding that a right knee disability was incurred in service. The Veteran's STRs are silent for any complaints or findings regarding the right knee, and on July 1996 separation examination he did not report a right knee disability.

Arthritis is a chronic disease listed under 38 C.F.R. § 3.309(a). As the Veteran has right knee DJD, the provisions regarding chronicity and continuity under 38 C.F.R. § 3.303(b) must be addressed. See Walker v. Shinseki, 708 F.3d 1331 (Fed. Cir. 2013). After a review of all of the evidence, the Board finds that the by a preponderance, the evidence demonstrates that a chronic right knee disability was not manifested in service, or on a continuous basis thereafter; and that the current right knee disability is unrelated to service. The Veteran has not specifically contended that he has had right knee symptoms continuously since service.

There is also no evidence that right knee arthritis was manifested in the initial year following the Veteran's discharge from active duty. The postservice medical evidence of record does not show complaints or treatment for the right knee until 2000, approximately 4 years after the Veteran's separation from service. While this alone is not determinative or dispositive of whether he had a right knee disability during the intervening years following service, it is nonetheless probative evidence tending to refute such notion. Consequently, service connection for a right knee disability on the basis that it became manifest in service and persisted, or on a presumptive basis (for arthritis under 38 U.S.C.A. § 1112) is not warranted. 

Postservice evaluation/treatment records provide no indication that a right knee disability may somehow otherwise be directly related to the Veteran's service. Accordingly, service connection for a right knee disability on the basis that it was incurred or aggravated in service is not warranted. 

As was note, the Veteran's primary theory of entitlement to this benefit is one of secondary service connection. The January 2010/June 2011 VA medical opinions, which the Board has found adequate and probative, indicate that the Veteran's pes planus did not cause or aggravate his right knee disability. Because there is no competent (medical opinion/treatise) evidence to the contrary, the Board finds those opinions persuasive. The provider cited to factual data (i.e. that the pes planus is now mild) and pointed to other etiology considered more likely, the Veteran's morbid obesity. While the Veteran has indicated that a podiatrist related his right knee disability to his pes planus, the record does not include such opinion, and he did not submit such opinion during the abeyance period afforded for that purpose. The question of whether a disability such as pes planus causes or aggravates another disability (here, as of a knee) is a medical question in nature, beyond the scope of lay observation; it requires medical expertise. Consequently, the Veteran's own opinion in this matter is not competent evidence. See Jandreau, supra. 

In light of the foregoing, the Board concludes that the preponderance of the evidence is against the Veteran's claim of service connection for a right knee disability. Accordingly, it must be denied.


ORDER

The appeal seeking service connection for a right ankle disability and a right knee disability, both to include as secondary to a service-connected disability, is denied.


REMAND

The Board finds that further development of the record is required to comply with VA's duty to assist the Veteran in the development of the facts pertinent to the claims of service connection for a cervical spine disability and a left ankle disability. See 38 C.F.R. § 3.159. VA is obligated to make reasonable efforts to assist a claimant in obtaining evidence necessary to substantiate his claim. 38 U.S.C.A. § 5103A. 

The Veteran testified that he sought private treatment for his cervical spine from a chiropractor after service but had not submitted the records of this treatment. A review of the record did not find records of such treatment. Records of treatment for a disability for which service connection is sought, particularly of early postservice treatment, are likely to contain information pertinent to a service connection claim, and must be sought, if adequately identified.

On January 2010 VA examination, the examiner noted that there was no documentation of complaint of ankle pain in the Veteran's STRs. However, the STRs reflect that he twisted his left ankle in October 1994; there was mild to moderate swelling, full range of motion, but increased pain with inversion; the joint was stable. The assessment was sprained left ankle. The examination (and the June 2011 addendum opinion by the same examiner, who referred to the January 2010 examination as rationale for the opinions stated in the addendum opinion) are therefore premised on an inaccurate medical history and are inadequate. Additionally, the January 2010/June 2011 examiner did not discuss whether any left ankle disability is secondary to the Veteran's service-connected lumbosacral strain. Consequently, another examination to determine the etiology of the Veteran's left ankle disability is necessary. 

Finally, relevant VA evaluation or treatment records may be outstanding. Any VA treatment records are constructively of record, and must be secured.

Accordingly, the case is REMANDED for the following:

1. The AOJ should secure for the record copies of the complete updated (to the present) clinical records of any (and all) VA evaluations and/or treatment the Veteran has received for his cervical spine disability and/or his left ankle disability. The AOJ should also ask the Veteran to identify all providers of private evaluation and/or treatment he has received for the cervical spine disability (specifically including of the postservice chiropractic treatment he has reported), and to provide authorizations for VA to secure the complete clinical records of all such treatment and evaluations. The AOJ should secure for association with the record the complete clinical records outstanding from all providers identified.

2. The AOJ should thereafter arrange for an orthopedic examination of the Veteran to determine the likely etiology of his left ankle disability, and in particular whether or not it is related to his service or (was caused or aggravated by) his service-connected bilateral pes planus and/or his lumbosacral strain. The Veteran's entire record must be reviewed by the examiner in conjunction with the examination. Based on examination of the Veteran and review of his record, the examiner should provide opinions that respond to the following:

a) What is the most likely etiology for the Veteran's left ankle disability? Is it at least as likely as not (a 50% or greater probability) that it was incurred in or caused by service, to include as due to the October 1994 ankle sprain?

b) Alternatively, is it at least as likely as not (a 50% or greater probability) that the left ankle disability was (i) caused or (ii) aggravated by (increased in severity due to) his service-connected bilateral pes planus and/or lumbosacral strain? [The opinion must address aggravation.]

c) If the opinion is to the effect that the bilateral pes planus and/or lumbosacral strain did not cause, but aggravated, the left ankle disability, the examiner should also specify, so far as possible, the degree of such disability (pathology/impairment) that resulted from the aggravation. 

The examiner must explain the rationale for all opinions. 

3. The AOJ should then review the record, arrange for any further development indicated, and readjudicate the remaining claims. If either remains denied, the AOJ should issue an appropriate supplemental statement of the case, afford the Veteran and his representative opportunity to respond, and return the case to the Board.

The appellant has the right to submit additional evidence and argument on the matters the Board has remanded. Kutscherousky v. West, 12 Vet. App. 369 (1999).
These claims must be afforded expeditious treatment. The law requires that all claims that are remanded by the Board for additional development or other appropriate action must be handled in an expeditious manner. See 38 U.S.C.A. §§ 5109B, 7112 (West 2014).


______________________________________________
George R. Senyk
Veterans Law Judge, Board of Veterans' Appeals



Department of Veterans Affairs