Citation Nr: 1617304 
Decision Date: 04/29/16 Archive Date: 05/04/16

DOCKET NO. 11-13 741 ) DATE
 )
 )

On appeal from the
Department of Veterans Affairs Regional Office in Waco, Texas


THE ISSUE

Entitlement to service connection for the cause of the Veteran's death to include as secondary to herbicide exposure. 


ATTORNEY FOR THE BOARD

C. Biggins, Associate Counsel

INTRODUCTION

The Veteran served on active duty from February 1967 to February 1969. 

This matter is before the Board of Veterans' Appeals (Board) on appeal from a 
June 2009 rating decision of the Waco, Texas, Department of Veterans Affairs (VA) Regional Office (RO). 

This appeal was previously before the Board, most recently in June 2014. As discussed below, the requested development was substantially complied with and the claim is ready for appellate review. See Stegall v. West, 11 Vet. App. 268 (1998). 


FINDINGS OF FACT

1. The Veteran died in September 2008. The cause of death was determined to be sepsis syndrome with an underlying cause of coagulopathy, respiratory failure, and severe metabolic acidosis, with significant contributing causes of end stage renal disease, end stage liver disease, and diabetes mellitus, type II. 

2. At the time of the Veteran's death he was service connected for history of skin fungus with tinea rash, right hand osteoarthritis of the fingers, and an injury to right hand ring finger. 

3. The Veteran was not exposed to herbicides during his active period of service. 

4. The principal or contributory cause of the Veteran's death was not due to herbicide exposure, an incident or injury that occurred in service, or to a service-connected disability. 


CONCLUSION OF LAW

The criteria for service connection for cause of the Veteran's death have not been met. 38 U.S.C.A. §§ 1310, 5103, 5107 (West 2014); 38 C.F.R. §§ 3.102, 3.159, 3.307, 3.309, 3.312 (2015).


REASONS AND BASES FOR FINDINGS AND CONCLUSION

I. Duties to Notify and Assist 

VA has duties to notify and assist claimants in substantiating a claim for VA benefits. 38 U.S.C.A. §§ 5100, 5102, 5103, 5103A, 5107, 5126; 38 C.F.R. §§ 3.102, 3.156(a), 3.159, and 3.326(a). Proper notice was provided in a January 2009 letter. 

VA has a duty to assist the appellant in the development of the claim. The claim file includes VA treatment records, private medical records, the Veteran's statements, and the statements of the appellant in support of the claim. The Board finds that no medical opinion is required for the adjudication of this claim. As discussed within, the Board finds that there is no medical evidence indicating that the Veteran's service-connected disabilities (history of skin fungus with tinea rash, right hand osteoarthritis of the fingers, and injury to right hand ring finger) resulted in his death. The evidence does not indicate that the disease process leading to the Veteran's death was related to his active military service or service-connected disability. There is also no evidence that the Veteran was exposed to herbicides in service. Thus, it is not necessary to obtain a medical opinion because there is no reasonable possibility that such assistance would aid in substantiating the claim. DeLaRosa v. Peake, 515 F.3d 1319 (Fed. Cir. 2008). 

The Board finds that all relevant facts have been properly and sufficiently developed in this appeal and no further development is required to comply with the duty to assist the appellant in developing the facts pertinent to the claim. Essentially, all available evidence that could substantiate the claim has been obtained.

II. Legal Criteria 

Generally, service connection may be granted for a disability resulting from disease or injury incurred in or aggravated by active service. 38 U.S.C.A. § 1110 (West 2014); 38 C.F.R. § 3.303(a) (2015). In addition, service connection may be granted for any disease diagnosed after separation from service, when all the evidence including that pertinent to service, establishes that the disease was incurred in service. 38 C.F.R. § 3.303(d) (2015).

Further, where the Veteran served continuously for ninety (90) or more days during a period of war, and if a malignant tumor became manifest to a degree of 10 percent or more within one year from the date of his or her termination of such service, such disease shall be presumed to have been incurred in service, even though there is no evidence of such disease during the period of service. 38 U.S.C.A. §§ 1101, 1112, 1113; 38 C.F.R. §§ 3.307, 3.309. 

The death of a Veteran will be considered as having been due to a service-connected disability when the evidence establishes that such disability was either the principal or a contributory cause of death. 38 C.F.R. § 3.312(a). A service connected disability will be considered as the principal (primary) cause of death when such disability, singly or jointly with some other condition, was the immediate or underlying cause of death or was etiologically related. 38 C.F.R. § 3.312(b). 

The Board notes that if a Veteran was exposed to an herbicide agent during active service, certain specified diseases will be service-connected if the requirements of 38 C.F.R. § 3.307(a)(6)(iii) are met, even though there is no evidence of such disease during service, provided further that the rebuttable presumption provisions of 38 C.F.R. § 3.307(d) are also satisfied. See 38 C.F.R. § 3.309(e). The veteran has been diagnosed with diabetes mellitus, type II, which is enumerated in 38 C.F.R. § 3.309(e) for which presumptive service connection is warranted based on herbicide exposure. Id. In addition to the presumptive criteria, the appellant may establish service connection based on exposure to herbicide with proof of actual direct causation. Combee v. Brown, 34 F.3d 1039 (Fed. Cir. 1994). 

III. Service Connection for Cause of the Veteran's Death 

The appellant contends that the Veteran's death was a result of his exposure to herbicides while serving in the Panama Canal Zone. The Veteran's DD Form 214 indicated that the Veteran served from February 1967 to February 1969. He was noted to have approximately ten months of foreign service. A DA Form 20 indicated that the Veteran's service in Panama began in April 1968. A September 2008 death certificate noted the Veteran's cause of death was sepsis syndrome due to coagulopathy, respiratory failure, and severe metabolic acidosis, which began two days prior to death, with contributing causes of end stage renal disease, end stage liver disease, and diabetes mellitus type II.

The Board finds there is no probative evidence of record which shows that the Veteran was exposed to herbicides or that his cause of death was otherwise incurred or aggravated by his active service. 

In response to the June 2014 Board remand a request was sent to the Defense Personnel Records Information Retrieval System (DPRIS) for verification of exposure to Agent Orange while stationed in Fort Kobbe with the 3rd Battalion, 508th Infantry from April 1968 to May 1968 and 5th Infantry, for the period of May 1968 to June 1968. DPRIS responded "We researched the United States Army historical records available to us. They do not document the spraying, testing, transporting, storage, or usage of Agent Orange at Fort Kobbe, Panama Canal Zone during the period 1968 - 1969." The Board notes that the June 2014 remand required the AOJ to request verification of exposure to Agent Orange for the dates of April 1968 through February 1969. While the AOJ only requested verification of exposure for the dates of April 1968 through June 1968, the response from DPRIS encompassed the time frame of April 1968 through April 1969. Thus, the Board finds the remand was complied with. Stegall, supra. 

The AOJ also requested verification of exposure to herbicides from VA's Compensation and Pension service in connection with a claim filed by the Veteran during his lifetime. A January 2005 response indicated that the Department of Defense "inventory does not contain any instance of herbicide use, testing or disposal in Panama." The RO contacted Compensation and Pension service again in November 2015 in order to request verification of Agent Orange exposure for Fort Kobbe, Panama from April 1968 to February 1969 with the 3rd Battalion, 508th Infantry, as well as the 3rd Battalion 5th Infantry. The response indicated the Department of Defense list "does not show any use, testing, or storage of tactical herbicides at any area in Panama, including Fort Kobbe, Panama. A recent December 2012 extensive search of historical records revealed no evidence that Agent Orange was ever shipped to, buried, or used anywhere in the Panama Canal Zone." A May 2013 print out of the Herbicide Tests and Storage Outside the US published by VA, did not list Panama as one of the places where herbicides were tested or stored. As a result of the responses from DPRIS and VA's Compensation and Pension service a formal finding of a lack of information required to verify exposure to herbicides during military service was made in November 2015. 
 
During his lifetime, the Veteran submitted news articles indicating that Agent Orange had been used in the Panama Canal Zone. The Veteran submitted a November 1999 article entitled "Agent Orange Affects Soldiers' Health" which indicated that the United States conducted military tests with Agent Orange in Panama, according to "former military officials and some veterans who now suffer from Agent-Orange related disease." The article referenced a veteran who served in Panama and received VA benefits for exposure to herbicides noting, "Although [the veteran's] documented exposure to Agent Orange occurred later, in Camp Drumm, New York" not in Panama. The article does not reference the Veteran in the instant appeal specifically. 

Additionally, the Veteran submitted a January 2004 news article entitled "U.S. Military Tested Agent Orange in Panama." This article stated that Agent Orange was sprayed in Panama in order to "simulate the battlefield conditions of Southeast Asia." The article also indicated use of toxic herbicides has been identified by VA as a factor of the in the deaths of at least three U.S. servicemen stationed in Panama in the 1960's and 1970's, but did not provide the specific facts of these cases. This article does not specifically reference the Veteran.

The Veteran submitted a June 2005 article from CBC news entitled "In Depth Agent Orange Deadly Defoliants." This article indicated "U.S. Veterans groups have complied lists of areas where they believe the U.S. and allied forces used chemical herbicides and defoliants. The U.S. Veterans groups concluded after performing their own research that herbicides were sprayed in the Panama Canal Zone from the 1960's to early 1970's." This article does not reference the Veteran specifically, or provide details on what research was conducted to reach the conclusion that herbicides were sprayed in the Panama Canal Zone. 

The Board finds the news articles previously submitted by the Veteran are not of limited probative value in favor of the appellant's claim. The articles do not specifically reference the Veteran or provide details specific enough to determine their veracity. Therefore, the Board finds these articles lack probative value and do not weigh in favor of the appellant's claim. 

The only evidence that the Veteran specifically was exposed to herbicides comes from his and the appellant's statements. The Veteran stated in a February 2004 statement that he was exposed to Agent Orange while serving in Panama. At a May 2005 decision review officer hearing the Veteran testified that when he was stationed in Panama "they sprayed and they wanted the place to look just like Vietnam. So they killed foliage to make it look like Vietnam."

In a June 2010 notice of disagreement and May 2011 VA Form 9 the appellant stated that her husband informed her that he was exposed to Agent Orange while stationed in Panama. The appellant indicated that the stomach aches and skin conditions the Veteran experienced in service as well as his adult onset diabetes type II were evidence that the Veteran had been exposed to Agent Orange in service. 

The Board finds the Veteran's statements as to his exposure to herbicides in Panama not competent evidence of such exposure, as they appear to be based on the submitted newspaper articles rather than his own memory. As noted above, at the May 2005 decision review officer hearing the Veteran testified that when he was stationed in Panama "they wanted the place to look just like Vietnam. So they killed foliage to make it look like Vietnam. And I also followed the jungle operations course... we made jumps on Ft. Kobbe and into the drop zone, or whatever you call it. I don't remember exactly what the names of them were..." The January 2004 article submitted by the Veteran stated that Panama was sprayed with Agent Orange in order to simulate conditions in Vietnam, as well as spraying occurring near "drop zones." The Veteran's statements do not contain any specific information of herbicide exposure that is not otherwise indicated in the submitted news articles. Additionally, the Veteran admitted that he had difficulty remembering specifics. Thus, as the Veteran's statements come over 40 years after his separation from service, lack specificity, and are for a pecuniary purpose, the Board finds that they are not credible. Therefore, the Veteran's lay statements are not probative evidence of exposure to herbicide while in service. 

Moreover, the Board finds the appellant's statements as to the Veteran's exposure to herbicides are not competent evidence. Lay person are competent to testify to things of which they have firsthand knowledge. Jandreau v. Nicholson, 492 F. 3d 1372 (Fed. Cir. 2007). The appellant has testified that the Veteran has told her that he was exposed to Agent Orange while serving in Panama. The appellant is competent to testify as to her firsthand knowledge of the Veteran's statements to her, but the appellant does not have any direct firsthand knowledge of the Veteran's in-service exposure to herbicides. Thus, the appellant's lay statements as to the Veteran's exposure to herbicides are not probative evidence in favor of the claim. 

Additionally, the appellant has contended that the Veteran's cause of death was caused by exposure to herbicide. Although lay persons are competent to provide opinions on some medical issues, see Kahana v. Shinseki, 24 Vet. App. 428, 435 (2011), the specific issue in this case (the cause of the Veteran's death) falls outside the realm of common knowledge of a lay person. See Jandreau, supra. While the appellant is competent to describe the Veteran's symptoms prior to his death, the Board accords her statements regarding the etiology of his cause of death less probative value as she is not competent to opine on such complex medical questions. See Jones v. Brown, 7 Vet. App. 134 (1994). 

Moreover, the appellant has stated that the Veteran's diabetes was a result of his herbicide exposure. Diabetes mellitus, type II, is a disability that is presumptively service connected on the basis of herbicide exposure. 38 C.F.R. § 3.309(e). The Veteran had filed a claim for entitlement to service connection for his diabetes mellitus, type II as a result of exposure to herbicides. This claim was denied in August 2005 because it was not shown that the Veteran had been exposed to herbicides. To date, the probative evidence of record does not show that the Veteran was exposed to herbicides in service. Therefore, service connection for diabetes mellitus, type II, on a presumptive basis and thus service connection for cause of the Veteran's death as caused by diabetes would not be warranted. 

When weighing the evidence of record, the Board finds that the competent, probative, and persuasive evidence is against the appellant's claim. In so finding, the Board places greater probative weight on the DPRIS response and the VA's Compensation and Pension research response, than on the Veteran's and appellant's lay statements and news articles submitted by the Veteran. 

Additionally, no evidence of record indicated that the Veteran's service-connected history of skin fungus with tinea rash, right hand osteoarthritis of the fingers, and injury to right hand ring finger, caused the Veteran's sepsis syndrome due to coagulopathy, respiratory failure, severe metabolic acidosis, and therefore death. Therefore, service connection for the cause of the Veteran's death due to his service connected disabilities is not warranted. 

Therefore, based on the competent and probative evidence of record, the Board finds that service connection for the cause of the Veteran's death as due to service or exposure to herbicides in service is not warranted. The preponderance of the evidence is against the appellant's claim and, as such, that doctrine is not applicable in the instant appeal, and the claim must be denied. 38 U.S.C.A. § 5107; 38 C.F.R. § 3.102. 


ORDER

Service connection for the cause of the Veteran's death is denied. 



____________________________________________
M.E. LARKIN
Veterans Law Judge, Board of Veterans' Appeals


Department of Veterans Affairs