RADER, Circuit Judge.
 

 Mr. Combee sought to show a connection between his exposure to radiation during service in the armed forces and his maladies. The Department of Veterans Affairs (Secretary) had promulgated an exclusive list of radiogenic conditions with a presumptive connection to exposure to ionizing radiation. Mr. Combee’s condition, neutropenia, is not on that list. Therefore, the Board of Veterans Appeals found, and the Court of Veterans Appeals affirmed, that Mr. Combee did not show a connection between his service and his malady. Both the Board and the Court of Veterans Appeals construed section 5 of the Veterans’ Dioxin and Radiation Exposure Compensation Standards (Radiation Compensation) Act, Pub.L. No. 98-542, § 5, 98 Stat. 2725, 2727-29 (1984), to preclude proof of direct service connection. Because section 5 does not remove a veteran’s right to pursue direct service connection with proof of actual direct causation, this court reverses and remands for such consideration.
 

 BACKGROUND
 

 Mr. Combee served in the United States Army during World War II. The Army assigned Mr. Combee to duty as a military policeman in Nagasaki, Japan. He arrived in Nagasaki between one and two weeks after the detonation of the atomic bomb in 1945. During the ten days Mr. Combee spent in Nagasaki, he consumed local food and water. Therefore, Mr. Combee qualifies as a radiation exposed veteran under section 5(a)(1)(B) of the Act, 98 Stat. at 2727, and under 38 C.F.R. § 3.311b(b)(l)(i) (1993).
 

 Mr. Combee’s service records indicate that, in 1946, he received treatment for “scabies,” but was allergic to the treatment and developed acute dermatitis. In 1958, Mr. Combee began receiving treatment for eczema. He alleged that his exposure to ionizing radiation in 1946 had exacerbated his skin
 
 *1041
 
 condition.
 
 Combee v. Principi,
 
 4 Vet.App. 78, 80-81 (1993).
 

 Mr. Combee first filed a claim for veterans’ benefits on March 21, 1968. He sought to show a connection between his service in Nagasaki and his skin disorders. The Veterans Affairs Regional Office (VARO) denied service connection for Mr. Combee’s claimed maladies — chronic xerosis, herpes, leukope-nia of unknown etiology, and thrombocytope-nia of unknown etiology.
 
 Combee,
 
 4 Vet.App. at 81. Leukopenia is a reduction in the circulating white blood cell count to less than 4000 per microliter.
 
 The Merck Manual
 
 1173 (Robert Berkow et al. eds., 15th ed. 1992). In 1986, Mr. Combee filed a claim for benefits due to his leukopenia. In 1988, the Board affirmed a denial of this claim as well.
 

 In 1989, two doctors expressed opinions that Mr. Combee suffered from both leu-kopenia and neutropenia. Neutropenia is “a reduction in the blood neutrophil (granulo-cyte) count often leading to an increased susceptibility to bacterial and fungal infections.”
 
 The Merck Manual
 
 at 1173. Mr. Combee filed again. The VARO treated the filing as a request to reopen the 1988 claim. The VARO denied the request because it sought relief for the same condition under a new name and because the Radiation Compensation Act did not include either leukope-nia or neutropenia as radiogenic diseases.
 

 Again, the Board and the Court of Veterans Appeals affirmed. Both the Board and the court found that Mr. Combee did not have a radiogenic disease within the meaning of 38 C.F.R. § 3.311b(b)(2) (1993), the Secretary’s list of radiogenic conditions. The Court of Veterans Appeals reasoned that the VARO reasonably interpreted section 3.311b(b)(2) as an exclusive list of radiogenic diseases qualifying for the statutory presumption of 38 U.S.C. § 1154(a)(2) (Supp. IV 1992).
 
 Combee,
 
 4 Vet.App. at 92-94. The court noted that if Mr. Combee’s condition had appeared on this list, he could have shown a connection to his service based solely on his exposure to ionizing radiation. The court denied Mr. Combee’s request for en banc review of this decision with two judges dissenting.
 
 Combee v. Brown,
 
 5 Vet.App. 248 (1993). Mr. Combee appeals.
 

 DECISION
 

 This court reviews a Court of Veterans Appeals decision to determine whether interpretation of any regulation in the decision is (1) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law; (2) contrary to a constitutional right; (3) in excess of statutory jurisdiction or in violation of a statutory right; or (4) without observance of procedure required by law. 38 U.S.C. § 7292(d)(1) (Supp. IV 1992).
 

 I.
 

 Congress enacted the Radiation Compensation Act in an atmosphere of scientific and medical uncertainty about the long-term health effects of exposure to dioxin and ionizing radiation.
 
 See
 
 § 2(4), (12), 98 Stat. at 2725-2726. Due to this uncertainty, veterans exposed to radiation were rarely successful in proving a service connection for their maladies.
 
 See, e.g.,
 
 130 Cong.Rec. 13,147-13,149 (1984) (statement of Sen. Cranston).
 

 An honorably discharged veteran can obtain compensation:
 

 For disability resulting from personal injury suffered or disease contracted in line of duty, or for aggravation of a preexisting injury suffered or disease contracted in line of duty, in the active military, naval, or air service, during a period of war, the United States will pay to any veteran thus disabled and who was discharged or released under conditions other than dishonorable from the period of service in which said injury or disease was incurred, or preexisting injury or disease was aggravated, compensation as provided in this sub-chapter, but no compensation shall be paid if the disability is a result of the veteran’s own willful misconduct or abuse of alcohol or drugs.
 

 38 U.S.C. § 1110 (Supp. IV 1992). The Secretary of Veterans Affairs accounts for certain factors in ascertaining direct service connection:
 

 The Secretary shall include in the regulations pertaining to service-connection of disabilities (1) additional provisions in effect requiring that in each case where a
 
 *1042
 
 veteran is seeking service-connection for any disability due consideration shall be given to the places, types, and circumstances of such veteran’s service as shown by such veteran’s service record, the official history of each organization in which such veteran served, such veteran’s medical records, and all pertinent medical and lay evidence....
 

 38 U.S.C. § 1154(a) (Supp. IV 1992).
 

 Thus, to show service connection, veterans, in effect, have to show that exposure to radiation or another hazardous condition during service actually caused their disease.
 
 *
 
 38 C.F.R. § 3.303 (1993). For example, in a 1990 case involving a claim for hypothyroidism, the Veterans Administration General Counsel denied compensation because service exposure to ionizing radiation was not shown to be a “causative factor” in the development of the disease. VA Off. Gen. Counsel Precedent Op. 69-90 (July 18, 1990),
 
 discussed in Combee,
 
 4 Vet.App. at 92.
 

 Proof of direct service connection thus entails proof that exposure during service caused the malady that appears many years later. Actual causation carries a very difficult burden of proof.
 
 Cf. Munn v. Secretary of Dep’t of Health & Human Servs.,
 
 970 F.2d 863, 865 (Fed.Cir.1992);
 
 Grant v. Secretary of Dep’t of Health & Human Servs.,
 
 956 F.2d 1144, 1147-49 (Fed.Cir.1992).
 

 Limited scientific knowledge about radiation’s effects compounds the difficulty of directly proving service connection. The House Report accompanying the Radiation Compensation Act discussed this difficulty:
 

 Many of these troops [atomic veterans] were exposed to low-level ionizing radiation which may or may not have been accurately documented with proper exposure devices or methodologies. To compound the problem, there is limited scientific understanding of the relationship between exposure to low doses of ionizing radiation and subsequent health problems.
 

 H.R.Rep. No. 592, 98th Cong., 2d Sess. 7 (1984),
 
 reprinted in
 
 1984 U.S.C.C.A.N. 4449, 4453. The Report also noted:
 

 Although current evidence indicates that some veterans exposed to ionizing radiation are experiencing serious medical problems, available data falls far short of meeting the test that the exercise of sound medical judgment reflects that these disabilities are related to military service.
 

 Id.
 
 at 9,
 
 reprinted in
 
 1984 U.S.C.C.A.N. at 4455.
 

 Recognizing the difficulties of showing service connection for radiation maladies, Congress enacted the Radiation Compensation Act in 1984. The Act provided for a procedure to determine — based on sound scientific and medical evidence — which diseases had some connection to radiation exposure. Section 4 expanded the scope of section 1154:
 

 The Secretary shall include in the regulations ... (2) the provisions required by section 5 of the [Radiation Compensation] Act.
 

 38 U.S.C. § 1154(a)(2) (Supp. IV 1992),
 
 amended by
 
 Radiation Compensation Act § 4, 98 Stat. at 2727.
 

 Section 6(d) of the Act, in turn, established the Scientific Council of the Veterans’ Advisory Committee on Environmental Hazards. Section 6(d), 98 Stat. at 2729-2730. Section 6(d)(2) charges the Scientific Council with evaluating scientific studies regarding the connection between radiation exposure and diseases. Section 6(d)(2), 98 Stat. at 2730. These studies relieved individual veterans of the nearly impossible task of amassing ra-dioepidemiological proof linking their diseases to radiation exposure.
 

 Section 5(a)(1) of the Act requires the Secretary of Veterans Affairs, based on this new radioepidemiological evidence, to set guidelines for the resolution of disputes over radiation causation. Section 5(a)(1), 98 Stat. at 2729. These guidelines govern,
 
 inter alia,
 
 the Secretary’s evaluations of scientific studies. Section 5(b)(1)(A), 98 Stat. at 2729. While the Secretary must perform the evalu
 
 *1043
 
 ations based on advice from the scientific council, the Secretary must further check the studies for statistical accuracy, reliability upon replication, and ability to withstand peer review.
 
 Id.
 
 The Act also directs the Secretary to:
 

 [MJake determinations, based on sound medical and scientific evidence, with respect to each disease described in subpara-graph (B) as to whether service connection shall ... be granted in the adjudication of individual eases
 

 [and] include in the regulations prescribed under this section provisions specifying the factors to be considered in adjudicating issues relating to whether or not service connection should be granted in individual cases and the circumstances governing the granting of service connection for such disease.
 

 Section 5(b)(2)(A)(i), (in), 98 Stat. at 2728.
 

 Following the statutory mandate, the Secretary promulgated 38 C.F.R. § 3.311b. This regulation provides a list of radiogenic and non-radiogenic diseases. Diseases and maladies with an ascertained causal connection to radiation exposure appear on this list. The Secretary specified that this list is exclusive. 38 C.F.R. § 3.311b(b)(2) (1993) (“ ‘ra-diogenic disease’ shall include only the following”).
 

 Although 38 C.F.R. § 3.311b(b)(2) provides an exclusive list of the radiogenic diseases, the Secretary can amend the list to account for any statistical association between another disease and exposure. 38 C.F.R. § 1.17(c) (1993). The Secretary has, in fact, amended the list to add diseases.
 
 See, e.g.,
 
 Claims Based on Exposure to Ionizing Radiation, 58 Fed.Reg. 16,358 (1993) (codified at 38 C.F.R. § 3.311b(b)(2)(xviii)-(xix)) (adding ovarian cancer and parathyroid adenoma); Claims Based on Exposure to Ionizing Radiation and Herbicides Containing Dioxin, 53 Fed.Reg. 48,551 (1988) (codified at 38 C.F.R. § 3.311b(b)(2)(xvi)-(xvii)) (adding posterior subcapsular cataracts and non-malignant thyroid nodular disease). Additionally, the Veterans Administration maintains statistics on veteran claims relying on radiation exposure. Adjudication of Claims Based on Exposure to Dioxin or Ionizing Radiation, 50 Fed.Reg. 34,452, 34,457 (1985) (codified at 38 C.F.R. § 3.311b).
 

 Exposure alone, as a result of atmospheric testing or service in Hiroshima or Nagasaki, qualifies a veteran suffering from a
 
 listed
 
 disease that has become manifest within a certain latency period, for presumptive service connection. 38 C.F.R. § 3.311b (1993). In essence, the list lifts the burden of proving direct service connection and provides exposed veterans with sound scientific evaluations of the radiogenicity of their diseases. For diseases listed as radiogenic, exposed veterans thus generally receive swift and uniform compensation. Indeed, the Radiation Compensation Act specifies that in the adjudication of individual claims, the benefit of the doubt is given to veterans on all issues material to their claims. Radiation Compensation Act § 2(13), 98 Stat. at 2726;
 
 see also
 
 38 U.S.C. § 5107(b) (Supp. IV 1992) (granting veteran claimants benefit of the doubt).
 

 II.
 

 Thus, under the 1984 Act, a veteran can establish service connection in one of two ways. If possible, the veteran can show that the disease or malady was incurred during or aggravated by service. As discussed, this route includes the difficult burden of tracing causation to a condition or event during service.
 

 Veterans can also establish service connection presumptively under the Radiation Compensation Act. Under this procedure, veterans need only show exposure to radiation under certain circumstances and contraction of a disease on the list of radiogenic diseases within a certain latency period.
 

 In order to show service connection, veterans must either show that connection directly or show entitlement to the 1984 Radiation Compensation Act’s presumption. The list is not the exclusive means of proof of service connection. Rather, the presumption triggered by the list provides an additional means for exposed veterans to show service connection. Thus, the presumptive service
 
 *1044
 
 connection procedure of the 1984 Act does not foreclose proof of direct service connection under 38 U.S.C. § 1110.
 
 See
 
 38 C.F.R. § 3.303(d) (1993) (“The presumptive provisions ... are intended as liberalizations applicable when the evidence would not warrant service connection without their aid.”). The list of radiogenic diseases, while an exclusive catalogue of maladies triggering presumptive service connection, is not the only means of showing service connection. Veterans retain the opportunity to show direct service connection by establishing direct actual causation.
 

 In sum, the Radiation Compensation Act created, in effect, a presumption of service connection for exposed veterans with radiog-enic diseases. Consequently, veterans contracting radiogenic diseases can receive swift and uniform compensation. To qualify for presumptive service connection, an exposed veteran must suffer from a disease which underwent the scientific qualification procedures.
 
 See, e.g.,
 
 130 Cong.Rec. 13,149 (1984) (statement of Senator Cranston). Thus, the Department of Veterans Affairs correctly interpreted the Radiation Compensation Act to mean that it could establish a list of radiog-enic diseases based on the results of scientific and medical evaluations. To this extent, the Department’s interpretation is consistent with the purpose of the Act, to make the process simple and uniform.
 

 The regulation promulgated under the 1984 Radiation Compensation Act included subsection (h), a provision apparently ensuring that veterans could continue to show service connection directly:
 

 Nothing in this section will be construed to prevent the establishment of service connection for any injury or disease otherwise shown by sound scientific or medical evidence to have been incurred or aggravated during active service.
 

 38 C.F.R. § 3.311b(h) (1992).
 

 The Board of Veterans Appeals, however, interpreted 38 C.F.R. § 3.311b to preclude proof of direct service connection.
 
 Combee,
 
 4 Vet.App. at 95 (“Since neutropenia is not one of the recognized ‘radiogenic diseases’ set forth in 38 C.F.R. § 3.311b(b)(2), appellant was precluded from establishing service connection on a direct basis based solely on his alleged exposure to ionizing radiation.”). Indeed the VA has since amended 38 C.F.R. § 3.311b(h) to reflect this reading.
 
 See
 
 Claims Based on Exposure to Ionizing Radiation, 58 Fed.Reg. 16359 (1993) (codified at 38 C.F.R. § 3.311b(h) (1993)). Therefore, the VA does not allow a radiation-exposed veteran whose malady surfaced years after exposure to attempt to prove actual direct causation under 38 C.F.R. § 3.303(d). Under this interpretation of the Radiation Compensation Act, veterans could lose legal options existing prior to its enactment.
 

 The Radiation Compensation Act does not, however, preclude or authorize the VA to preclude the veteran from proving actual direct causation if the veteran is able to do so. To the extent 38 C.F.R. § 3.311b forecloses the veteran’s right to present proof of actual causation, it lacks support in the Act.
 

 III.
 

 The Board of Veterans Appeals evaluated Mr. Combee’s claim under a flawed interpretation of the Radiation Compensation Act.
 
 Clyde R. Combee,
 
 BVA 88-12284, slip op. at 4-5 (Oct. 11, 1988). It correctly determined that Mr. Combee’s malady, neutropenia, does not appear on the list, and, therefore, does not qualify Mr. Combee for presumptive service connection.
 
 See Combee,
 
 4 Vet.App. at 95 (describing Board findings). In reaching this conclusion, the Board of Veterans Appeals correctly determined that the Radiation Compensation Act reserved presumptive service connection for diseases on the radiogenic list. Thus, Mr. Combee did not qualify for presumptive service connection.
 

 To the extent Mr. Combee seeks to add neutropenia to the Secretary’s list and thereby qualify for presumptive service connection, the Radiation Compensation Act prescribes a detailed scientific and medical process for supplementing the list. The Radiation Compensation Act authorizes the Scientific Council and the Secretary to prepare guidelines according to strict scientific standards. Radiation Compensation Act § 5(b)(1)(A), (B), 98 Stat. at 2727-28. Therefore, this court detects no reason to disturb
 
 *1045
 
 the determinations of the Board and the Court of Veterans Appeals that neutropenia does not, in this ease at this time, qualify Mr. Combee for presumptive service connection.
 

 However, the record does not show that the Board examined the sufficiency of Mr. Combee’s proof to show direct service connection under 38 U.S.C. § 1110 and 38 C.F.R. § 3.303(d). The Radiation Compensation Act protects veterans’ opportunity to show direct service connection, even if their maladies do not qualify for presumptive service connection. To the extent that the Board and the Court of Veterans Appeals denied Mr. Combee the chance to prove actual causation, they erred. Therefore, this court remands to give Mr. Combee an opportunity to prove that his neutropenia or leu-kopenia was incurred in or aggravated by his service.
 

 COSTS
 

 Each party to bear its own costs.
 

 REVERSED and REMANDED.
 

 *
 

 In addition to a direct service connection, a veteran could show service connection if a disease or disability manifested itself within a certain period following separation from service. This presumptive period did not help veterans whose disability or disease contracted during service might lie latent or develop only after many years.