http://www.va.gov/vetapp16/Files5/1641948.txt

Citation Nr: 1641948 
Decision Date: 10/31/16 Archive Date: 11/08/16

DOCKET NO. 13-28 378 ) DATE
 )
 )

On appeal from the
Department of Veterans Affairs Regional Office in Nashville, Tennessee

THE ISSUES

1. Entitlement to service connection for coronary artery disease, to include as due to herbicide exposure.

2. Entitlement to service connection for prostate cancer, to include as due to herbicide exposure.

3. Entitlement to service connection for erectile dysfunction, to include as due to herbicide exposure.

REPRESENTATION

Appellant represented by: The American Legion

WITNESS AT HEARING ON APPEAL

Appellant

ATTORNEY FOR THE BOARD

Brandon A. Williams, Associate Counsel

INTRODUCTION

The Veteran served on active duty from December 1966 to December 1970.

These matters come before the Board of Veterans' Appeals (Board) on appeal from January 2012 and February 2012 rating decisions of the Department of Veterans Affairs (VA) Regional Office (RO) in Nashville, Tennessee.

The Veteran testified at a hearing before the undersigned, held on June 17, 2015 in Nashville, Tennessee; a transcript of the hearing testimony is in the claims file.

In an August 2015 decision, the Board denied the Veteran's claims on appeal. In response to the August 2015 decision denying service connection for coronary artery disease, prostate cancer, and erectile dysfunction, the Veteran appealed this decision to the U.S. Court of Appeals for Veterans Claims (CAVC). In June 2016, the Court granted a Joint Motion for Remand (JMR) filed by the parties, which requested a vacatur and remand of the August 2015 decision. The appeal has now returned to the Board for further action.

The appeal is REMANDED to the Agency of Original Jurisdiction (AOJ). VA will notify the appellant if further action is required.

REMAND

The Veteran contends that he has coronary artery disease, prostate cancer, and erectile dysfunction that are related to his military service. Specifically, the Veteran has asserted that his claimed conditions are related to herbicide exposure while serving on U-Tapao Airfield (AF), Thailand. Additionally, the Veteran has claimed that in route to U-Tapao AF, he spent 30 minutes at a Vietnam airport. (See June 2011 Agent Orange Examination). 

The Veteran's service personnel records document that he served with a munitions maintenance squadron at the U-Tapao Airfield in Thailand from December 1967 to August 1968, with duty as a munitions specialist. A July 1968 Airman Performance Report documents that he served as a member of the delivery crew and among other duties, transported munitions between the flight line and munitions area. The Veteran has asserted that the munitions area, also referred to as the bomb dump, was in very close proximity to the airfield's perimeter fence, and that by driving around the munitions area on a daily basis, he was exposed to Agent Orange. At the Board hearing, the Veteran testified that the bomb dump was approximately 50 feet from the fence line. A lay statement submitted on the Veteran's behalf by an individual who served as a military working dog handler at the U-Tapao AFB during the Vietnam War indicated that parts of the munitions area were as close as 50 yards from the base perimeter. The Veteran further submitted photographs showing aerial and ground views of the base demonstrating the proximity of the two areas.

In conducting the development required by the M21-1MR, the RO made a request to the Joint Services Records Research Center (JSRRC) in an attempt to corroborate the Veteran's contentions regarding exposure to Agent Orange. In October 2012, JSRRC responded confirming the Veteran's reports of an explosion at U-Tapao Airfield in August 1968, but stating that there was no documentation that Agent Orange was used as a part of the cleanup process. JSRRC concluded that the available historical information does not document the spraying, testing, transporting, storage, or usage of Agent Orange at U-Tapao Airfield, or that unit members were exposed to Agent Orange.

Further, in a January 2012 memorandum, the JSRRC concluded that the Veteran's duties as a munitions maintenance specialist would not have taken him to the perimeter of the base in Thailand.

The Board finds that further development is needed prior to adjudication. 

While the JSRRC has concluded that the Veteran's military occupation would not have taken him near the perimeter of U-Tapao AF; neither JSRRC memorandum discusses whether or not it is likely that the Veteran would have spent some time in Vietnam in route to Thailand. The Board finds that an inquiry as to whether servicemen deployed to U-Tapao AF would have landed in Vietnam (even for a few minutes) necessary. Additionally, the Board finds that an inquiry as to whether the likelihood of the Veteran being exposed to herbicides either directly or indirectly while serving in U-Tapao AF necessary. Such inquiry must consider the Veteran's military occupation, duties assigned, and proximity to the perimeter of the base.

Lastly, where the evidence does not warrant presumptive service connection, the United States Court of Appeals for the Federal Circuit has determined that an appellant is not precluded from establishing service connection with proof of direct causation. Combee v. Brown, 34 F.3d 1039 (Fed. Cir. 1994). While the Veteran has asserted that his claimed conditions are related to herbicide exposure, it is essential that VA assist the Veteran in proving service connection on a direct basis.

The claims file does not reflect that the Veteran has been provided a VA medical examination or medical opinion in regard to his claimed conditions. VA's duty to assist requires it to provide an adequate medical examination and/or obtain a medical opinion if the evidence is not sufficient to decide the claim. However; in order for the duty to assist to be triggered, the following must be present: (A) competent lay or medical evidence of a current disability, persistent, or recurrent symptoms of a disability, (B) evidence establishing the Veteran suffered an event, injury, or disease or symptoms of a disease, and (C) evidence indicating that the claimed disability or symptoms may be associated with the established event, injury, or disease in service. 38 C.F.R. § 3.159 (c)(4)(i). The Board finds that the requirements have been met in order to trigger the VA's duty to assist for the reasons stated below.

Here, the claims folder reflects that the Veteran has been complained of, or been treated for, heart disease, prostate cancer, and erectile dysfunction. The Veteran has asserted that the conditions are related to his military service. 

Therefore, absent of VA conceding in-service herbicide exposure, a VA medical examination and medical opinion is required by VA's duty to assist the Veteran in developing evidence to substantiate his claims to service connection.

Accordingly, the case is REMANDED for the following action:

1. Request the appellant to identify all medical providers (VA and private) from whom he has received treatment for heart disease, prostate cancer, and erectile dysfunction; complete and return a provided VA Form 21-4142, Authorization and Consent to Release Information, for the identified treatment records. After obtaining completed VA Forms 21-4142, the AOJ should attempt to obtain all identified pertinent medical records and associate them with the claims file.

2. The AOJ should request from the C&P service a review of the inventory of herbicide operations maintained by the Department of Defense (DOD) to determine whether herbicides were sprayed in areas in close proximity to U-Tapao AF, Thailand. If exposure is not verified by the request to C&P, verification should be sought from the Joint Services Records Research Center (JSRRC). 

The AOJ must inquire as to whether or not it is likely that servicemen deployed to U-Tapao AF, Thailand would have landed in Vietnam (even for a few minutes) in route to Thailand. 

Additionally, the AOJ must inquire as to the likelihood of the Veteran being exposed to herbicides either directly or indirectly while serving in U-Tapao AF, Thailand. Such inquiry must consider the Veteran's military occupation, duties assigned, and proximity to the perimeter of the base

3. After completing the above directives, if exposure is not confirmed or conceded by VA, schedule the Veteran for a VA medical examination in regard to entitlement to service connection for heart disease, prostate cancer, and erectile dysfunction. The claims file should be made available for the examiner to review and the examination report should reflect that such review was accomplished. The examiner is requested to furnish the following opinions:

a.) Whether it is at least as likely as not (50 percent or greater) that the Veteran's heart disease is related to, or aggravated by, his military service. 

b.) Whether it is at least as likely as not (50 percent or greater) that the Veteran's prostate cancer is related to, or aggravated by, his military service.

c.) Whether it is at least as likely as not (50 percent or greater) that the Veteran's erectile dysfunction is related to, or aggravated by, his military service.

Any opinion should include a complete rationale. The examiner should consider the entire claims.

4. After undertaking any other development deemed appropriate, the RO should readjudicate the issues on appeal. If any of the benefits sought on appeal are not granted, the RO should issue a supplemental statement of the case (SSOC) and provide the Veteran and his representative with an appropriate opportunity to respond. Thereafter, the case should be returned to the Board, as appropriate for further appellate consideration.

The appellant has the right to submit additional evidence and argument on the matters the Board has remanded. Kutscherousky v. West, 12 Vet. App. 369 (1999).

This claim must be afforded expeditious treatment. The law requires that all claims that are remanded by the Board of Veterans' Appeals or by the United States Court of Appeals for Veterans Claims for additional development or other appropriate action must be handled in an expeditious manner. See 38 U.S.C.A. §§ 5109B, 7112 (West 2014).

_________________________________________________
L. M. BARNARD
Acting Veterans Law Judge, Board of Veterans' Appeals

Under 38 U.S.C.A. § 7252 (West 2014), only a decision of the Board of Veterans' Appeals is appealable to the United States Court of Appeals for Veterans Claims. This remand is in the nature of a preliminary order and does not constitute a decision of the Board on the merits of your appeal. 38 C.F.R. § 20.1100(b) (2015).