Citation Nr: 1722230 
Decision Date: 06/15/17 Archive Date: 06/29/17

DOCKET NO. 06-00 165A ) DATE
 )
 )

On appeal from the
Department of Veterans Affairs Regional Office in Muskogee, Oklahoma


THE ISSUES

1. Entitlement to service connection for a lung disability, to include chronic obstructive pulmonary disorder (COPD), pneumonia and asthma.

2. Entitlement to an initial compensable evaluation for tinea pedis and onychomycosis.

3. Entitlement to a total disability rating based on individual unemployability (TDIU) prior to April 29, 2013.

4. Entitlement to a disability rating in excess of 20 percent for peripheral neuropathy of the right lower extremity.

5. Entitlement to a disability rating in excess of 20 percent for peripheral neuropathy of the left lower extremity.

6. Entitlement to an effective date prior to April 29, 2013, for the assignment of a 20 percent rating for peripheral neuropathy of the right lower extremity. 

7. Entitlement to an effective date prior to April 29, 2013, for the assignment of a 20 percent rating for peripheral neuropathy of the left lower extremity.


REPRESENTATION

Appellant represented by: Jeany Mark, Esquire


ATTORNEY FOR THE BOARD

A.M. Clark, Counsel


INTRODUCTION

The Veteran had active service from July 1969 to February 1977, with confirmed service in the Republic of Vietnam from January 1970 to December 1970.

These matters have come to the Board of Veterans' Appeals (Board) on appeal from rating decisions of the Muskogee, Oklahoma Regional Office (RO) of the Department of Veterans Affairs (VA).

In a July 2013 decision, the Board denied the Veteran's claims of entitlement to service connection for a lung disability and entitlement to an initial compensable evaluation for tinea pedis and onychomycosis. Additional claims were denied and remanded at that time. The Veteran appealed the Board's denial of these issues to the United States Court of Appeals for Veterans Claims (Court). In a December 2014 memorandum decision, the Court vacated the Board's decision with respect to his claims for entitlement to service connection for a lung disability and entitlement to an initial compensable evaluation for tinea pedis and onychomycosis and remanded these matters to the Board for development and readjudication. Of note, the Veteran abandoned any challenge of the issues of service connection for a left knee disability, a back disability, rashes or boils, or a jaw disability, or increased ratings for hypertension or for left or right lower extremity peripheral neuropathy.

By rating action dated September 2014, the RO increased the disability ratings for the Veteran's peripheral neuropathy of the right and left lower extremities to 20 percent effective April 29, 2013. In a statement from the Veteran dated September 2015, he expressed disagreement with the awards of the 20 percent ratings. The Veteran's appeals regarding the ratings and effective dates assigned for his service-connected peripheral neuropathy of the right and left lower extremities stem from this September 2014 rating decision.

This case was most recently before the Board in February 2016. A service connection claim for sleep apnea was granted at that time. A service connection claim for cataracts was denied. The Board additionally denied increased rating claims for posttraumatic stress disorder, erectile dysfunction, hypothyroidism, and bilateral retinopathy. He was granted an increase for his service-connected peripheral vascular disease of the left lower extremity prior to June 22, 2007. An earlier effective date for the grant of special monthly compensation based on loss of use of a creative organ was denied. His claims for service connection for a lung disability and for increased ratings for tinea pedis and onychomycosis and for peripheral neuropathy of the left and right lower extremities, and entitlement to TDIU prior to April 29, 2013 were remanded for further development. 

The issues of entitlement an initial compensable evaluation for tinea pedis and onychomycosis, entitlement to TDIU prior to April 29, 2013, entitlement to a disability rating in excess of 20 percent for peripheral neuropathy of the right lower extremity, entitlement to a disability rating in excess of 20 percent for peripheral neuropathy of the left lower extremity, entitlement to an effective date prior to April 29, 2013, for assignment of a 20 percent rating for peripheral neuropathy of the right lower extremity, and entitlement to an effective date prior to April 29, 2013, for the assignment of a 20 percent rating for peripheral neuropathy of the left lower extremity are addressed in the REMAND portion of the decision below and are REMANDED to the Agency of Original Jurisdiction (AOJ).


FINDING OF FACT

Resolving all doubt in his favor, the Veteran's lung disability is the result of his presumed exposure to herbicide agents.


CONCLUSION OF LAW

The criteria for service connection for a lung disability have been met. 38 U.S.C.A. §§ 1110, 5107 (West 2014); 38 C.F.R. §§ 3.303, 3.307, 3.309 (2016).


REASONS AND BASES FOR FINDING AND CONCLUSION

The Veteran served on active duty from July 1969 to February 1977, with confirmed service in the Republic of Vietnam from January 1970 to December 1970. The Veteran has asserted that his respiratory disability is the result of herbicide exposure in Vietnam.
 
Under the relevant laws and regulations, service connection may be granted for a disability resulting from disease or injury incurred in or aggravated by active service. 38 U.S.C.A. § 1110 (West 2014). Generally, the evidence must show: (1) the existence of a present disability; (2) in-service incurrence or aggravation of a disease or injury; and (3) a causal relationship between the present disability and the disease or injury incurred or aggravated during service. Shedden v. Principi, 381 F.3d 1163, 1166-67 (Fed. Cir. 2004); Caluza v. Brown, 7 Vet. App. 498, 505 (1995).
 
Additionally, Veterans who, during active military, naval, or air service, served in the Republic of Vietnam during the period beginning on January 9, 1962, and ending on May 7, 1975, shall be presumed to have been exposed during such service to an herbicide agent, unless there is affirmative evidence to establish that the veteran was not exposed to any such agent during that service. The last date on which such a veteran shall be presumed to have been exposed to an herbicide agent shall be the last date on which he or she served in the Republic of Vietnam during the period beginning on January 9, 1962, and ending on May 7, 1975. 38 C.F.R. § 3.307(a)(6)(iii). Service personnel records confirm that the Veteran served in the Republic of Vietnam during this time frame. 

If a veteran was exposed to an herbicide agent during active military, naval, or air service, certain diseases shall be service-connected if the requirements of 38 C.F.R. § 3.307(a)(6)(iii) are met, even though there is no record of such disease during service, provided further that the rebuttable presumption provisions of 38 C.F.R. § 3.307(d) are also satisfied. 38 C.F.R. § 3.309(e) (2016). 

However, COPD, pneumonia and asthma are not diseases included under 38 C.F.R. § 3.309(e). The absence of a disease from the presumptive list does not preclude a veteran from otherwise proving that his disability resulted from exposure to Agent Orange or otherwise linking his respiratory disability to service. Combee v. Brown, 34 F.3d 1039 (Fed. Cir. 1994). Accordingly, the Board will still consider whether entitlement to service connection can be granted on a direct basis for his respiratory disability. 

The Veteran initially underwent a VA examination in January 2011. This examination, however, has been deemed inadequate. See December 2014 CAVC memorandum decision. The Veteran underwent a VA respiratory examination in July 2016. He was diagnosed with asthma and COPD. The VA examiner opined that the Veteran's claimed disability was less likely than not incurred in or caused by service. She rationalized that because there is no documented evidence found in the available medical records to indicate that the Veteran had chronic respiratory symptoms or sought help for chronic breathing problems during service, or within 1 year following discharge, it is less likely than not that the Veteran had a lung disability related to any incident of service, to include his documented upper respiratory infection. The Veteran's conceded herbicide exposure was not addressed.

In a January 2017 statement, the Veteran's private treating physician opined that Agent Orange exposure is as likely as not to have been causative for the Veteran's COPD. He cited to several studies and provided thorough rationale. The examiner considered the Veteran's history of cigarette smoking. He stated that the Veteran's COPD is multi-factorial, and his smoking does not eliminate the possibility of other significant causes, such as Agent Orange exposure. 

In the Board's view, the mention of Agent Orange by the treating physician, when read in the light most favorable to the Veteran, essentially means that the Veteran's exposure to herbicide agents could not be excluded (ruled out) as the cause of his COPD. It is true that the February 2017 opinion lists Agent Orange as just one possible or probable factor in the development of his lung disability. However, the Board is unable to state, based on the medical evidence currently of record, that exposure to Agent Orange during service is not related to the Veteran's lung disability. Therefore, some doubt remains as to whether the Veteran's lung disability is at least as likely as not due to service as opposed to some other cause, and the Board will resolve that doubt in the favor of the Veteran.
 
The Board thus finds that the competent evidence is at least in equipoise as to a nexus to service. Service connection for a lung disability is therefore warranted.
 
Finally, as the Board is granting the claim above, any deficiency as to VA's duties to notify and assist pursuant to the provisions of the Veterans Claims Assistance Act of 2000 (VCAA) is rendered moot.


ORDER

Service connection for COPD is granted.



REMAND

Unfortunately, a remand is required in this case with respect to the remaining issues. Although the Board sincerely regrets the additional delay, it is necessary to ensure that there is a complete record upon which to decide the Veteran's remaining claims so that he is afforded every possible consideration. 

Increased Rating: Tinea Pedis and Onychomycosis-Here, the Board remanded this issue in February 2016 to provide the Veteran a VA examination to determine the severity of his service-connected tinea pedis and onychomycosis. Documentation in the file indicates that the Veteran was scheduled for a skin examination but did not attend. The Veteran's attorney contacted the VA in April 2016 and stated that the Veteran was unable to attend any examinations because he was caring for his wife who had undergone two surgeries for cancer and was recuperating. There is no indication that his skin examination was rescheduled. 

Good cause having been found for his failure to appear for a scheduled VA examination, the case should be returned to the RO to reschedule the Veteran for another VA examination. 

Additionally, the RO did not promulgate a supplemental statement of the case (SSOC) on the Veteran's claim for an increased rating for tinea pedis and onychomycosis. A remand by the Board imposes upon the Secretary of the VA a concomitant duty to ensure compliance with the terms of the remand. Where the remand orders are not complied with, the Board errs in failing to insure compliance. Stegall v. West, 11 Vet. App. 268 (1998). Because there was not complete compliance with the remand instructions, the Board is compelled to remand the appeal for appropriate adjudicatory consideration of his claim and the promulgation of an SSOC. Id; see also 38 C.F.R. §§ 19.9, 19.31(c) (2016).

Increased Ratings: Peripheral Neuropathy of the Right and Left Lower Extremities-With respect to the Veteran's claims for increased ratings for his peripheral neuropathy of the right and left lower extremities, the Veteran was last afforded VA examinations in July 2013. 

More importantly, recent treatment records, particularly a July 18, 2016, VA examination (completed for other issues), located in the Veteran's Virtual VA file, reflects that his peripheral neuropathy of the right and left lower extremities may have worsened since his last VA examination. The Veteran reported that his lower legs often go numb and that he has difficulty maintaining balance. 

As such, the Board finds that the Veteran should be afforded a new VA examination in order to determine the current nature and severity of his service-connected peripheral neuropathy of the right and left lower extremities. See Snuffer v. Gober, 10 Vet. App. 400, 403 (1997).

Intertwined Issues-The claims for entitlement to TDIU prior to April 29, 2013; entitlement to an effective date prior to April 29, 2013, for the assignment of a 20 percent rating for peripheral neuropathy of the right lower extremity; and entitlement to an effective date prior to April 29, 2013, for the assignment of a 20 percent rating for peripheral neuropathy of the left lower extremity are inextricably intertwined with the pending issues of entitlement to increased ratings for his tinea pedis and onychomycosis and entitlement to increased ratings for peripheral neuropathy of the right and left lower extremities. A decision by the Board on the Veteran's TDIU prior to April 29, 2013 and earlier effective date claims would, at this point, be premature. As such, the claims for entitlement to TDIU prior to April 29, 2013 and earlier effective date claims for the assignment of a 20 percent rating for peripheral neuropathy of the right and left lower extremities are deferred. See Harris v. Derwinski, 1 Vet. App. 180 (1991).

Accordingly, the case is REMANDED for the following actions:

1. Schedule the Veteran for VA examination to determine the nature and severity of his service-connected tinea pedis and onychomycosis. The Veteran's claims file must be provided to the examiner. The examiner must obtain a detailed clinical history from the Veteran. 

The examiner must specifically note whether or not the Veteran currently has a skin disability, the type, the anatomical areas of involvement, the percentage of the Veteran's entire body and exposed areas affected, and the types and extent of treatment required for the disability in the preceding 12-month period, to include use of corticosteroids. 

All pertinent pathology found on examination must be noted in the report of the evaluation. Any testing deemed necessary must be performed. Any opinion(s) offered must be accompanied by a clear rationale consistent with the evidence of record. 

2. Schedule the Veteran for VA examination to determine the nature and severity of his service-connected peripheral neuropathy of the right and left lower extremities. The Veteran's claims file must be provided to the examiner. The examiner must obtain a detailed clinical history from the Veteran. 

All pertinent pathology found on examination must be noted in the report of the evaluation. Any testing deemed necessary must be performed. Any opinion(s) offered must be accompanied by a clear rationale consistent with the evidence of record. 

3. After completing the above actions, and any other indicated development, the Veteran's claims must be re-adjudicated. If any of the benefits remain denied, a supplemental statement of the case must be provided to the Veteran and his attorney, if applicable. After the Veteran has had an adequate opportunity to respond, the appeal must be returned to the Board for appellate review

The appellant has the right to submit additional evidence and argument on the matters the Board has remanded. Kutscherousky v. West, 12 Vet. App. 369 (1999).

These claims must be afforded expeditious treatment. The law requires that all claims that are remanded by the Board of Veterans' Appeals or by the United States Court of Appeals for Veterans Claims for additional development or other appropriate action must be handled in an expeditious manner. See 38 U.S.C.A. §§ 5109B, 7112 (West 2014).




______________________________________________
CAROLINE B. FLEMING
Veterans Law Judge, Board of Veterans' Appeals



Department of Veterans Affairs