﻿Citation Nr: 18107539
Decision Date: 06/04/18 Archive Date: 06/02/18

DOCKET NO. 14-39 564
DATE: June 4, 2018
ORDER
Entitlement to service connection for arteriosclerosis as due to Agent Orange exposure is granted.
REMANDED
Entitlement to service connection for right upper extremity neurological disorder, including as due to Agent Orange exposure is remanded.
Entitlement to service connection for left upper extremity neurological disorder including as due to Agent Orange exposure is remanded.
Entitlement to service connection for Parkinson’s disease including as due to Agent Orange exposure is remanded.
Entitlement to service connection for a prostate condition including as due to Agent Orange exposure is remanded.

FINDING OF FACT
The Veteran currently has a diagnosis of coronary artery disease, which is within the category of ischemic heart disease and that may be presumptively service- connected due to his presumed Agent Orange exposure. 
CONCLUSION OF LAW
The criteria for entitlement to service connection for coronary artery disease as due to exposure to herbicide agents have been met. 38 U.S.C. §§ 1110, 1116, 5107(b) (2012); 38 C.F.R. §§ 3.102, 3.303, 3.307, 3.309 (2017).

REASONS AND BASES FOR FINDING AND CONCLUSION
Entitlement to service connection for a heart condition as due to Agent Orange exposure.

Under VA law, service connection may be granted for current disability resulting from disease contracted or an injury sustained while on active duty service. 38 U.S.C. § 1110 (2012); 38 C.F.R. § 3.303(a) (2017). 
The requirements for service connection are: (1) a current disability; (2) in-service incurrence or aggravation of a disease or injury; and (3) causal relationship between the disability and service. See Shedden v. Principi, 381 F.3d 1163, 1167 (Fed. Cir. 2004).
A veteran who served in the Republic of Vietnam during the Vietnam War is presumed to have been exposed during such service to an herbicide agent. 38 U.S.C. § 1116; 38 C.F.R. § 3.307(a)(6)(iii). Service in the Republic of Vietnam means actual service in-country in Vietnam from January 9, 1962 through May 7, 1975, and includes service in the waters offshore, or service in other locations if the conditions of service involved duty or visitation in the Republic of Vietnam. 38 C.F.R. § 3.307(a)(6)(iii). 
If exposure to herbicide agents is presumed to have occurred, the question turns to whether the specific disease is due to said exposure.
Presumptive service connection is available for specific diseases associated with exposure to herbicide agents, designated under 38 C.F.R. § 3.309(e). The list includes ischemic heart disease. 
Pursuant to 38 C.F.R. § 3.309(e), ischemic heart disease is defined as a condition including, but not limited to, acute, subacute, and old myocardial infarction; atherosclerotic cardiovascular disease including coronary artery disease (including coronary spasm) and coronary bypass surgery; and stable, unstable and Prinzmetal’s angina). 
Further, note 2 to this section clarifies, that term ischemic heart disease does not include hypertension or peripheral manifestations of arteriosclerosis such as peripheral vascular disease or stroke, or any other condition that does not qualify within the generally accepted medical definition of ischemic heart disease.
Turning to the specific circumstances of this case, there on file the November 2011 private medical record which indicates the diagnosis of mild atherosclerotic vascular disease including coronary artery disease. The diagnosis was rendered following having performed a chest angiography. That diagnosis qualifies for application of presumptive service connection under 38 C.F.R. § 3.309(e), again, being a condition which may be adjudicated presumptively service-connected due to Agent Orange exposure. Whereas there had been an EKG study approximately one-year prior which demonstrated results of, in part, “no evidence of myocardial ischemia,” the Board will consider the foregoing to have been a single and isolated test result, and further finds that the later diagnosis of mild “coronary artery disease” is sufficient for purposes of this claim particularly when resolving reasonable doubt in the Veteran’s favor with regard to determining the appropriate medical diagnosis. See 38 U.S.C. § 5107(b); 38 C.F.R. § 3.102.
Accordingly, service connection for coronary artery disease is deemed warranted.
REASONS FOR REMAND
A Board videoconference hearing was held March 2018, the transcript of which is of record.
1. Entitlement to service connection for right upper extremity neurological disorder, including as due to Agent Orange exposure is remanded.
2. Entitlement to service connection for left upper extremity neurological disorder including as due to Agent Orange exposure is remanded.
Under VA regulations, the condition of peripheral neuropathy is recognized as a disorder subject to presumptive service connection on the basis of exposure to an herbicide agent. 38 C.F.R. § 3.309(e). Specifically, this provision applies to “early-onset peripheral neuropathy.” A VA examination is required. The requested examination should determine whether the Veteran, in fact, has peripheral neuropathy. Moreover, the examiner should inquire as to whether neurological disability of the upper extremities developed secondary to other conditions, in accordance with 38 C.F.R. § 3.310(a), whether due to (1) Parkinson’s disease (if itself ultimately adjudicated service-connected); and/or (2) the residuals of the Veteran’s 1998 transient ischemic attack (TIA) inasmuch as this episode had any connection to cardiovascular disease.
3. Entitlement to service connection for Parkinson’s disease including as due to Agent Orange exposure is remanded.
Here again, the condition in question with regard to this claim, Parkinson’s disease, falls within the provisions of 38 C.F.R. § 3.309(e) for disorders that may be subject to presumptive service connection. Further medical evidence is necessary to address what is the exact diagnosis. VA examination is warranted.
4. Entitlement to service connection for a prostate condition as due to Agent Orange exposure.
Under the application law and regulations, prostate cancer is another condition for which presumptive service connection is available as due to Agent Orange exposure. The Veteran has averred that the claimed condition of benign prostatic hypertrophy (BPH) is linked to herbicide agent exposure, but that disorder is not specifically delineated under section 3.309(e). However, an examination should be afforded to determine anyway if there is a direct causal linkage to herbicide agent exposure in service. See Combee v. Brown, 34 F.3d 1039, 1043-44 (Fed. Cir. 1994). Further determination also should be made as to whether there are any signs that the Veteran’s previously notated BPH has developed or approached becoming a diagnosis of prostate cancer, or other disorder. 
The matters are REMANDED for the following action:
1. Schedule the Veteran for an examination by an appropriate clinician to determine the nature and etiology of the claimed conditions of right and left upper extremity neurological disorders; Parkinson’s disease; and a prostate condition. 
The examiner must first determine whether based upon current clinical findings, the current diagnosis of Parkinson’s disease is applicable. 
The examiner must then determine the exact diagnosis with regard to the claimed prostate condition, and to include whether the Veteran’s formerly notated BPH has progressed to become prostate cancer.
Then with regard to any right/left upper extremity neurological disorders and a prostate condition that are diagnosed, the examiner must indicate whether each diagnosed disorder is at least as likely as not related to the Veteran’s military service including his presumed herbicide agent exposure. The examiner is advised that it is not sufficient to conclude that the disabilities are not due to exposure to herbicide agents because they are not on the list of conditions presumptively associated with such exposure. 
The examiner should determine whether any diagnosed right/left upper extremity neurological disorders are at least as likely as not caused by the service-connected coronary artery disease, including whether there is any potential that the Veteran’s 1998 transient ischemic attack (that left the upper extremities temporarily affected) had any role; and/or caused by Parkinson’s disease (if it is diagnosed). 
Lastly, the examiner should determine whether any diagnosed right/left upper extremity neurological disorders are at least as likely as not aggravated by the Veteran’s service-connected coronary artery disease, including whether there is any potential that the Veteran’s 1998 transient ischemic attack (that left the upper extremities temporarily affected) had any; and/or, whether they were aggravated by Parkinson’s disease (if it is diagnosed). 
The examiner must provide all findings, along with a complete rationale for his or her opinion(s) in the examination report. If any of the above requested opinions cannot be made without resort to speculation, the examiner must state this and provide a rationale for such conclusion. 

2. Thereafter, readjudicate the claims. If any benefit sought on appeal is not granted, the Veteran and his representative should be furnished with a Supplemental Statement of the Case (SSOC) and afforded an opportunity to respond before the case is returned to the Board for further appellate consideration.

 
D. Martz Ames
Veterans Law Judge
Board of Veterans’ Appeals
ATTORNEY FOR THE BOARD Jason A. Lyons