﻿Citation Nr: AXXXXXXXX
Decision Date: 05/09/19 Archive Date: 05/09/19

DOCKET NO. 181226-1663
DATE: May 9, 2019

ORDER

Entitlement to service connection for ischemic heart disease is granted.

Entitlement to service connection for type II diabetes mellitus is granted.

REMANDED

Entitlement to service connection for acute myeloblastic leukemia, to include as due to herbicide exposure, is remanded.

FINDINGS OF FACT

1. The Veteran served in Korea from December 1968 to December 1969. His duties as a mechanic and tow truck driver included responding to service calls along the DMZ during which he was exposed to herbicide agents. 

2. The Veteran has been diagnosed with ischemic heart disease, which is presumed to be related to his exposure to herbicide agents while serving in Korea.

3. The Veteran has been diagnosed with type II diabetes mellitus, which is presumed to be related to his exposure to herbicide agents while serving in Korea.

CONCLUSIONS OF LAW

1. Ischemic heart disease is presumed to have been incurred in active service. 38 U.S.C. §§ 1101, 1110, 1112, 1113, 1116, 5107; 38 C.F.R. §§ 3.102, 3.303, 3.307, 3.309.

2. Type II diabetes mellitus is presumed to have been incurred in active service. 38 U.S.C. §§ 1101, 1110, 1112, 1113, 1116, 5107; 38 C.F.R. §§ 3.102, 3.303, 3.307, 3.309.

REASONS AND BASES FOR FINDINGS AND CONCLUSIONS

On August 23, 2017, the President signed into law the Veterans Appeals

Improvement and Modernization Act, Pub. L. No. 115-55 (to be codified as

amended in scattered sections of 38 U.S.C.), 131 Stat. 1105 (2017), also known as

the Appeals Modernization Act (AMA). This law creates a new framework for

Veterans dissatisfied with VA’s decision on their claim to seek review. The Board

is honoring the Veteran’s choice to participate in VA’s test program, RAMP, the

Rapid Appeals Modernization Program.

The Veteran served on active duty from May 1968 to December 1969.

This case come before the Board of Veterans’ Appeals (Board) on appeal from a rating decision of the Veterans Affairs (VA) Regional Office (RO).

The Veteran selected the Higher-Level Review lane when he submitted the RAMP election form. Accordingly, the December 2018 RAMP rating decision considered the evidence of record as of the date VA received the RAMP election form. The Veteran timely appealed this RAMP rating decision to the Board and requested direct review of the evidence considered by the Agency of Original Jurisdiction (AOJ).

Law and Analysis

Service connection may be established for disability resulting from personal injury suffered or disease contracted in the line of duty in the active military, naval, or air service. 38 U.S.C. §§ 1110, 1131. That an injury or disease occurred in service is not enough; there must be chronic disability resulting from that injury or disease. Service connection may also be granted for any injury or disease diagnosed after discharge, when all the evidence, including that pertinent to service, establishes that the disease or injury was incurred in service. 38 C.F.R. §3.303(d).

For the showing of chronic disease in service, there is required a combination of manifestations sufficient to identify the disease entity, and sufficient observation to establish chronicity at the time. Arteriosclerosis and diabetes mellitus are considered to be a chronic disease for VA compensation purposes. If chronicity in service is not established, a showing of continuity of symptoms after discharge may support the claim. 38 C.F.R. §§3.303(b), 3.309; Walker v. Shinseki, 708 F.3d 1331 (Fed. Cir. 2013).

For veterans who have served 90 days or more of active service during a war period or after December 31, 1946, certain chronic disabilities are presumed to have been incurred in service if they manifested to a compensable degree within one year of separation from service. 38 U.S.C. §§1101, 1112, 1113, 1137; 38 C.F.R. §§ 3.307, 3.309.

If a veteran was exposed to an herbicide agent during active military, naval, or air service, certain diseases shall be service-connected if the requirements of section 3.307(a)(6) are met, even though there is no record of such disease during service, provided further that the rebuttable presumption provisions of section 3.307(d) are also satisfied. 38 C.F.R. § 3.309(e). Section 3.307(d)(6) provides that the term "herbicide agent" means a chemical in an herbicide used in support of the United States and allied military operations in the Republic of Vietnam during the period beginning on January 9, 1962, and ending on May 7, 1975. 38 C.F.R. § 3.307(d)(6)(i). Section 3.307(d)(6) also provides that a veteran who, during active military, naval, or air service, served in the Republic of Vietnam during the period beginning on January 9, 1962, and ending on May 7, 1975, shall be presumed to have been exposed during such service to an herbicide agent, unless there is affirmative evidence to establish that the veteran was not exposed to any such agent during that service. 38 C.F.R. § 3.307(d)(6)(iii). 

In addition, a veteran who during active military service between April 1, 1968, and August 31, 1971, served in a unit that operated in or near the Korean DMZ in an area in which herbicides are known to have been applied during that period, as determined by the DOD, shall be presumed to have been exposed during such service to a herbicide agent, unless there is affirmative evidence to the contrary. 38 C.F.R. § 3.307(a)(6)(iv). 

The diseases presumed to be associated with herbicide exposure include: chloracne or other acneform diseases consistent with chloracne, type 2 diabetes (also known as type II diabetes or adult-onset diabetes), Hodgkin's disease, ischemic heart disease (including, but not limited to, acute, subacute, and old myocardial infarction; atherosclerotic cardiovascular disease including coronary artery disease (including coronary spasm) and coronary bypass surgery; and stable, unstable and Prinzmetal's angina), all chronic B-cell leukemias (including, but not limited to, hairy-cell leukemia and chronic lymphocytic leukemia), multiple myeloma, non-Hodgkin's lymphoma, Parkinson's disease, acute and subacute peripheral neuropathy, porphyria cutanea tarda, prostate cancer, respiratory cancers (cancer of the lung, bronchus, larynx, or trachea), and soft-tissue sarcomas (other than osteosarcoma, chondrosarcoma, Kaposi's sarcoma, or mesothelioma). 38 C.F.R. § 3.309(e). 

In this case, the agency of original jurisdiction (AOJ) made several favorable findings in the December 2018 rating decision, which are binding on the Board. In particular, the AOJ determined that the Veteran was diagnosed with acute myeloblastic leukemia in 1981, which is currently in remission. The AOJ also found that he has been treated for ischemic heart disease since at least 2011 and that he had been noted as having type II diabetes mellitus as early as 1999. In addition, the AOJ noted that his MOS was a wheeled vehicle mechanic and that he served in Korea. The Veteran had served with the HQ 2nd Battalion, 8th Artillery, 7th Infantry Division from December 6, 1968, to December 11, 1969.

The Veteran has contended that he was exposed to Agent Orange while serving near the Korean demilitarized zone (DMZ). He has asserted that that he is entitled to presumptive service connection for type II diabetes mellitus and ischemic heart disease based on his in-service exposure to herbicides in Korea.

In considering the evidence of record under the laws and regulations as set forth above, the Board concludes that the Veteran is entitled to service connection for type II diabetes mellitus and ischemic heart disease.

The Veteran’s military personnel records show that he was stationed in Korea from December 1968 to December 1969. During his time in Korea, he was assigned to HQ 2nd Battalion, 8th Artillery, 7th Infantry Division. The Board notes that the Veteran’s unit has not been recognized by the Department of Defense as operating in the Korean DMZ during the qualifying time period for exposure to herbicide agents. 

Nevertheless, the Veteran served as a wheeled vehicle mechanic and wrecker operator/tow truck driver. He has submitted several statements regarding his duties as a wrecker operator in Korea, including along the DMZ. He explained that, as a mechanic/tow truck driver, he went to the DMZ many times, including Camp Casey and Panmunjom. He specifically recalled being sent to Panmunjom twice in 1969 to work on vehicles. He stated that he was there for several hours during which men were spraying something in the area that drifted in his direction. See December 2015 lay statement. He also recalled working in rice paddies and streams in Camp Casey while hooking up cables and chains to disabled vehicles. See January 2013 lay statement. The Veteran has also submitted photographs and maps in support of his contentions. He has alleged that, as a mechanic and wrecker operator, he was sent to various locations and camps along the DMZ, including Camp Giant twice and Munsan four or five times. Munsan is on the edge of the DMZ, near Panmunjom. See July 2018 correspondence. His statements are corroborated by the July 2012 lay statement from a fellow service member, H.T. (initials used to protect privacy). He served in Korea at the same time as the Veteran and remembers him driving his tow truck to different parts of Korea, including the DMZ. 

June 2016 and July 2016 Defense Personnel Records Information Retrieval System (DPRIS) documents from the Joint Service Records Research Center (JSRRC) show that they reviewed unit histories from 1968 and 1969 submitted by the 2nd Battalion of the 8th Artillery, the HQ 7th Infantry Division, and 8th U.S. Army Chronology. These histories document that the HQ and Alpha Battery were located at Camp McGovern, commonly referred to as RC#2. Bravo Battery was located at Compound K3, and Charlie Battery was located at Compound K2, South Korea. The JSRRC further noted that it was unable to verify or document the use, storage, spraying or transporting of herbicides or any specific duties performed by members of the unit along the DMZ.

The Board finds that the evidence of record shows that the Veteran served in Korea from December 1968 to December 1969, a period in which the Department of Defense has confirmed that Agent Orange was deployed in Korea near the DMZ. The Veteran’s assigned unit was stationed at Camp McGovern, a base near the DMZ. The Board also finds the Veteran credible with respect to his assertions of having regularly traveled near the DMZ to perform his duties as a mechanic and wrecker operator. While the DOD records do not document his specific duties, it is certainly plausible, if not likely, that the Veteran would be sent to various locations along the DMZ to service disabled vehicles as a mechanic and tow truck driver. His sworn statements in this regard are consistent and detailed. Further, the Veteran’s consistent statements have been corroborated by a fellow service member, H.T. 

In addition, as noted above, the Veteran’s post-service medical records reflect that he has been diagnosed with type II diabetes mellitus and ischemic heart disease. 

Based on the foregoing and resolving all reasonable doubt in favor of the Veteran, the Board finds that he was exposed to herbicides while serving in or near the Korean DMZ and that his type II diabetes mellitus and ischemic heart disease are presumed to be related to such exposure. Accordingly, service connection is warranted. 

REASONS FOR REMAND

As previously noted, the Veteran was diagnosed with acute myeloblastic leukemia in 1981, which has been documented as being in remission. Moreover, the evidence of record at the time of the December 2018 rating decision was sufficient to show that he had herbicide exposure while serving in Korea. However, acute myeloblastic leukemia is not one of the enumerated diseases that is presumed to be associated with herbicide exposure. Nevertheless, the regulations also provide that service connection may be granted for any disease diagnosed after discharge, when all evidence, including that pertinent to service, establishes that the disability was incurred in service. 38 C.F.R. §§ 3.303(d), 3.309(e); see also Combee v. Brown, 34 F.3d 1039 (Fed. Cir. 1994). In other words, a presumption of service connection provided by law is not the sole method for showing causation in establishing a claim for service connection for disability due to herbicide exposure. See Stefl v. Nicholson, 21 Vet. App. 120 (2007) (holding that the availability of presumptive service connection for some conditions based on exposure to Agent Orange does not preclude direct service connection for other conditions based on exposure to Agent Orange).

The Veteran was not afforded a VA examination in connection with his claim, and the evidence of record does not otherwise include any medical opinion addressing whether he has any residuals of acute myeloblastic leukemia that may be related to his herbicide exposure. Thus, a remand is needed to correct this pre-decisional error. Specifically, the Veteran should be afforded a VA examination and medical opinion to determine the nature and etiology of any leukemia or residuals that may be present. See McLendon v. Nicholson, 20 Vet. App. 79 (2006).

Accordingly, the case is REMANDED for the following action:

The Veteran should be afforded a VA examination to determine the nature and etiology of any acute myeloblastic leukemia or residuals thereof that may be present. Any and all studies, tests, and evaluations deemed necessary by the examiner should be performed. 

The examiner is requested to review all pertinent records associated with the claims file, including the Veteran's service treatment records, post-service medical records, and assertions.

It should be noted that the Veteran is considered competent to attest to factual matters of which he has had first-hand knowledge, including observable symptomatology. If there is a medical basis to support or doubt the history provided by the Veteran, the examiner should provide a fully reasoned explanation.

The examiner should state whether the Veteran has a current diagnosis of acute myeloblastic leukemia or any residuals thereof. He or she should also address whether acute myeloblastic leukemia is a chronic B-cell leukemia (including, but not limited to, hairy-cell leukemia and chronic lymphocytic leukemia)

For any current diagnosis or residuals identified, the examiner should opine as to whether it is at least as likely as not that the disorder is causally or etiologically related to his military service, to include any herbicide exposure therein (regardless of the fact that such an association may not be presumed). 

(The term "at least as likely as not" does not mean within the realm of medical possibility, but rather that the medical evidence both for and against a conclusion is so evenly divided that it is as medically sound to find in favor of a certain conclusion as it is to find against it.) 

A clear rationale for all opinions would be helpful and a discussion of the facts and medical principles involved would be of considerable assistance to the Board. Because it is important "that each disability be viewed in relation to its history [,]" 38 C.F.R. § 4.1, copies of all pertinent records in the appellant's claims file, or in the alternative, the claims file, must be made available to the examiner for review.

 

J.W. ZISSIMOS

Veterans Law Judge

Board of Veterans’ Appeals

ATTORNEY FOR THE BOARD D.S. Chilcote, Associate Counsel

The Board’s decision in this case is binding only with respect to the instant matter decided. This decision is not precedential and does not establish VA policies or interpretations of general applicability. 38 C.F.R. § 20.1303.