﻿Citation Nr: AXXXXXXXX
Decision Date: 06/19/19 Archive Date: 06/19/19

DOCKET NO. 181219-2549
DATE: June 19, 2019

ORDER

Service connection for parathyroid adenoma is denied.

Service connection for scar on neck as secondary to parathyroid adenoma is denied.

FINDINGS OF FACT

1. During service, the Veteran was exposed to 1.354 rem of low dose occupational radiation.

2. The Veteran's parathyroid adenoma was not present in service or for many years thereafter, and is not a result of exposure to ionizing radiation.

3. The Veteran's scar is not etiologically related to service or a service-connected disability.

CONCLUSIONS OF LAW

1. The criteria for service connection for parathyroid adenoma have not been met. 38 U.S.C. §§ 1110, 1131, 5107; 38 C.F.R. §§ 3.102, 3.303, 3.307, 3.309.

2. The criteria for service connection for scar on neck as secondary to parathyroid adenoma have not been met. 38 U.S.C. §§ 1110, 1131, 5107; 38 C.F.R. §§ 3.102, 3.310.

REASONS AND BASES FOR FINDINGS AND CONCLUSIONS

The Board notes that the rating decision on appeal was issued in September 2017. In May 2018, the Veteran elected the modernized review system. 84 Fed. Reg. 138, 177 (Jan. 18, 2019) (to be codified at 38 C.F.R. § 19.2(d)).

The Veteran served on active duty from August 1988 to August 1994. 

The Veteran selected the Higher-Level Review lane when he opted in to the Appeals Modernization Act (AMA) review system by submitting a Rapid Appeals Modernization Program (RAMP) election form. Accordingly, the November 2018 AMA rating decision considered the evidence of record as of the date VA received the RAMP election form. The Veteran timely appealed this rating decision to the Board and requested direct review of the evidence considered by the Agency of Original Jurisdiction (AOJ).

Service Connection

Service connection may be granted for current disability arising from disease or injury incurred or aggravated by active service. 38 U.S.C. § 1131. Service connection may be granted for any disease diagnosed after discharge when all the evidence, including that pertinent to service, establishes that the disease was incurred in service. 38 C.F.R. § 3.303 (d). Service connection generally requires (1) medical evidence of a current disability; (2) medical or, in certain circumstances, lay evidence of in-service incurrence or aggravation of a disease or injury; and (3) medical evidence of a nexus between the claimed in-service disease or injury and the current disability. Holton v. Shinseki, 557 F.3d 1362, 1366 (Fed. Cir. 2010). The determination as to whether the requirements for service connection are met is based on an analysis of all the evidence of record and the evaluation of its credibility and probative value. 38 U.S.C. § 7104(a); Baldwin v. West, 13 Vet. App. 1 (1999); see 38 C.F.R. § 3.303(a).

For cases involving radiation, service connection can be established in three ways. First, service connection can be awarded on a presumptive basis for diseases specific to “radiation-exposed Veterans” under 38 C.F.R. § 3.309(d). Second, service connection can be established under 38 C.F.R. § 3.303(d) with the assistance of the procedural advantages prescribed in 38 C.F.R. § 3.311, if the condition at issue is based on exposure to ionizing radiation with the subsequent development of a “radiogenic disease.” Third, as stated above, direct service connection can be established under 38 C.F.R. § 3.303(d) by showing that the disease was incurred during or aggravated by service without regard to the statutory presumptions. See Combee v. Brown, 34 F.3d 1039, 1042-1043 (Fed. Cir. 1994).

As it applies to 38 U.S.C. § 1112(c) and 38 C.F.R. § 3.309(d), the term “radiation-exposed veteran” means a veteran who participated in a “radiation-risk activity.” 38 U.S.C. § 1112(c)(3)(A); 38 C.F.R. § 3.309(d)(3)(i). The term “radiation-risk activity” means: onsite participation in a test involving the atmospheric detonation of a nuclear device; the occupation of Hiroshima or Nagasaki, Japan, during the period beginning on August 6, 1945, and ending on July 1, 1946; internment as a prisoner of war of Japan during World War II resulting in an opportunity for exposure to radiation comparable to those occupying Hiroshima or Nagasaki; certain service on the grounds of a gaseous diffusion plant in Paducah, Kentucky, Portsmouth, Ohio, or at area K25 at Oak Ridge, Tennessee; certain service on Amchitka Island, Alaska; or certain service that is commensurate with membership in the Special Exposure Cohort with the Department of Energy. See 38 U.S.C. § 1112(c)(3)(B); 38 C.F.R. § 3.309(d)(3)(ii).

If a claimant does not qualify as a “radiation-exposed veteran” under 38 C.F.R. § 3.309(d)(3) and/or does not suffer from one the presumptive conditions listed in 38 C.F.R. § 3.309(d)(2), the Veteran may still benefit from the special development procedures provided in 38 C.F.R. § 3.311 if the Veteran suffers from a radiogenic disease and claims exposure to ionizing radiation in service. Under 38 C.F.R. § 3.311, “radiogenic disease” means a disease that may be induced by ionizing radiation, which includes the Veteran’s diagnosed parathyroid adenoma. 38 C.F.R. § 3.311(b)(2).

When it has been determined that: (1) a veteran has been exposed to ionizing radiation; (2) the veteran subsequently develops a specified radiogenic disease; and (3) the disease first becomes manifest five years or more after exposure, the claim will be referred to the Under Secretary for Benefits for further consideration in accordance with 38 C.F.R. § 3.311(c).

Under the special development procedures in § 3.311(a), dose data will be requested from the Department of Defense in claims based upon participation in atmospheric nuclear testing, and claims based upon participation in the American occupation of Hiroshima or Nagasaki, Japan, prior to July 1, 1946. 38 C.F.R. § 3.311(a)(2). In all other claims, 38 C.F.R. § 3.311(a) requires that a request be made for any available records concerning the Veteran’s exposure to radiation. These records normally include, but may not be limited to, the Veteran’s Record of Occupational Exposure to Ionizing Radiation (DD Form 1141), if maintained, service medical records, and other records which may contain information pertaining to the Veteran’s radiation dose in service. All such records will be forwarded to the Under Secretary for Health, who will be responsible for preparation of a dose estimate, to the extent feasible, based on available methodologies. 38 C.F.R. §3.311(a)(2)(iii).

1. Parathyroid Adenoma

The Veteran contends that his parathyroid adenoma is due to or a result of in-service exposure to ionizing radiation. The Veteran alleges that he was exposed to ionized radiation in service between 1989 and 1994. Specifically, the Veteran argues in his notice of disagreement that while in service he was exposed to radiation while working as an Engineering Laboratory Technician aboard the USS Drum. The Veteran's specific duties included handling radioactive waste, sampling primary coolant from the nuclear reactor, conducting radiation surveys, and standing watch near the reactor.

Turning to the relevant evidence, in addition to the Veteran’s statements, the Veteran’s service treatment records (STR) reveal a Record of Exposure to Ionizing Radiation that shows a cumulative total dose of 1.354 rem. Therefore, the Veteran does have some exposure to ionizing radiation. Post-service treatment records reveal the Veteran was diagnosed with parathyroid adenoma in 2009. 

First, the Board concludes that the preponderance of the evidence is against finding that the Veteran was a “radiation-exposed veteran” within the meaning of 38 U.S.C. § 1112(c) and 38 C.F.R. § 3.309(d) as there is no evidence that the Veteran had onsite participation in a test involving the atmospheric detonation of a nuclear device; the occupation of Hiroshima or Nagasaki, Japan, during the period beginning on August 6, 1945, and ending on July 1, 1946; internment as a prisoner of war of Japan during World War II resulting in an opportunity for exposure to radiation comparable to those occupying Hiroshima or Nagasaki; certain service on the grounds of a gaseous diffusion plant in Paducah, Kentucky, Portsmouth, Ohio, or at area K25 at Oak Ridge, Tennessee; certain service on Amchitka Island, Alaska; or certain service that is commensurate with membership in the Special Exposure Cohort with the Department of Energy.

Second, the Board concludes the Veteran does have a “radiogenic disease” that qualifies for the procedural advantages prescribed in 38 C.F.R. § 3.311. The term “radiogenic disease” means a disease that may be induced by ionizing radiation and includes parathyroid adenoma. 38 C.F.R. § 3.311(b)(2).

In this case, in accordance with section 3.311, the RO obtained a June 2017 dose assessment from the Naval Dosimetry Center which determined that the Veteran had been exposed to 1.354 rem of DDE-Photon during the Veteran’s Active duty period between October 1989 to June 1994.

The RO thereafter obtained an August 2017 opinion from VA’s Director, Compensation Service, who explained that because the Veteran’s radiation dose did not exceed 5 rem in a year or 10 rem in a lifetime, it is unlikely that his parathyroid adenoma is attributable to radiation exposure while in miliary service. The August 2017 opinion states that an advisory opinion form the Under Secretary of Health is unnecessary due to the minimal exposure. The Director, Compensation Service stated that there is no reasonable possibility that the Veteran’s parathyroid adenoma resulted from radiation exposure in service. Because the development conducted pursuant to section 3.311 was unfavorable, it does not provide a basis upon which to grant the claim.

Finally, the third way to establish service connection for a disability claimed to be due to exposure to ionizing radiation during active duty is by providing evidence of direct causation. In that regard, the law provides that service connection may be granted when it is established that a disease diagnosed after discharge from service was otherwise incurred during active service, including as a result of exposure to ionizing radiation. 38 C.F.R. § 3.303(d); Combee v. Brown, 34 F.3d 1039 (Fed. Cir. 1994).

The Board acknowledges the positive nexus opinion of Dr. H.W. and the numerous medical journal articles submitted by the Veteran. Dr. H.W. states that it is more likely than not that the Veteran's low dose exposure to ionizing radiation over a five year period caused his parathyroid adenoma. However, Dr. H.W.’s opinion is contradicted by the medical literature of record. Although Dr. H.W. states that medical journals show a link between chronic low dose ionizing radiation and adverse health effects, he provides no examples. However, the scientific literature presented by the Veteran, and that used by VA, conclude that individuals with chronic low dose occupational exposure to ionizing radiation have shown no adverse health effects. 

The Veteran has provided excerpts and abstracts from 12 different medical journals and websites, all in support of his contention that exposure to ionizing radiation is the cause of his parathyroid adenoma. The Board notes, of these articles, the most prevalent studies show an increase in radiogenic diseases from those persons exposed to ionizing radiation as children. However, of the articles that discuss exposure to ionizing radiation at work, one studies workers involved in the clean up of the nuclear disaster at Chernobyl. The article states that whole body exposure was in the range of 3 to 870 rem, well in excess of the 1.354 the Veteran was exposed to. The other article specifically states that the studies of occupational workers who were chronically exposed to low dose ionizing radiation showed no adverse health effects.

In support of its conclusion, VA relies on the position paper, Radiation Risk in Perspective, of the Health Physics Society. This position paper states in “accordance with current knowledge of radiation health risks, the Health Physics Society recommends against quantitative estimation of health risks below an individual dose of 5 rem in one year or a lifetime dose of 10 rem above that received from natural sources.” Further, “there is substantial and convincing scientific evidence of health risks following high-dose exposure. However, below 5-10 rem (which includes occupational and environmental exposures), risks of health effects are either too small to be observed or are nonexistent.”

The Board accepts that the Veteran believes that the claimed disabilities are related to active service and specifically ionizing radiation exposure. However, the Veteran is not competent to link his diagnosis of parathyroid adenoma many years after service to any in-service injury or event, including radiation exposure, as the etiology is not susceptible to lay observation. Moreover, the etiology is complex and requires medical expertise not possessed by the Veteran. Jandreau v. Nicholson, 492 F.3d 1372 (Fed. Cir. 2007); Davison v. Shinseki, 581 F.3d 1313 (Fed. Cir. 2009). Therefore, the Veteran’s own opinion as to the cause of his disabilities has no probative value.

The Board assigns greater probative value to the opinion provided by the Director, Compensation Service based on information from the Naval Dosimetry Center, which supports the conclusion the Veteran has not been exposed to significant levels of ionizing radiation. This evidence weighs against finding that the Veteran’s parathyroid adenoma was caused by his exposure to radiation in service. The Board assigns less probative weight to the opinion of Dr. H.W. Although the stated basis for Dr. H.W.’s opinion is that the medical literature shows prolonged exposure to low-levels of ionizing radiation is linked to parathyroid adenomas, this conclusion is contradicted by the medical literature of record. 

Additionally, service connection for parathyroid adenoma is not warranted on a direct basis as the evidence shows that the condition was not incurred in service or otherwise related to service. In this regard, as noted above, the Veteran’s parathyroid adenoma was not diagnosed until 2009; 15 years after the Veteran’s separation from service. Further, parathyroid adenoma is not shown during the initial post separation year.

In sum, the preponderance of the competent and probative evidence is against a finding of service connection for parathyroid adenoma pursuant to the radiation provisions in 38 C.F.R. § 3.309(d) and 38 C.F.R. § 3.311, pursuant to the presumptive provisions in 38 C.F.R. § 3.309(a) as a chronic disease, and pursuant to direct service connection under 38 C.F.R. § 3.303.

Accordingly, the claim is denied. There is no doubt to resolve. 38 U.S.C. § 5107(b).

2. Scar

The Veteran contends that his scar is due to his parathyroid adenoma.

The question for the Board is whether the Veteran has a current disability that is proximately due to or the result of, or was aggravated beyond its natural progress by service-connected disability.

As discussed above, the Board has denied entitlement to service connection for parathyroid adenoma. As the Veteran is not currently service-connected for parathyroid adenoma, secondary service connection for a scar may not be established as a matter of law. See 38 C.F.R. § 3.310(a).

Service connection may also be granted on a direct basis, but the preponderance of the evidence is also against finding that the Veteran’s scar is related to an in-service injury or disease. 38 U.S.C. §§ 1110, 1131; Holton v. Shinseki, 557 F.3d 1363, 1366 (Fed. Cir. 2009); 38 C.F.R. § 3.303(a), (d). 

The Veteran's scar is a result of surgery in 2009 to remove a parathyroid adenoma. No probative evidence links the disability to service. Accordingly, the claim for service connection for a scar must be denied. 

 

MICHAEL E. KILCOYNE

Veterans Law Judge

Board of Veterans’ Appeals

ATTORNEY FOR THE BOARD J. Uller, Associate Counsel

The Board’s decision in this case is binding only with respect to the instant matter decided. This decision is not precedential, and does not establish VA policies or interpretations of general applicability. 38 C.F.R. § 20.1303.