﻿Citation Nr: AXXXXXXXX
Decision Date: 10/30/20 Archive Date: 10/30/20

DOCKET NO. 200210-74043
DATE: October 30, 2020

ORDER

Service connection for prostate cancer, to include as due to herbicide exposure is granted.

REMANDED

The issue of service connection for bladder cancer, to include as due to herbicide exposure is remanded.

The issue of service connection for urothelial cancer, to include claimed secondary to prostate cancer is remanded.

FINDINGS OF FACT

1. Affording the Veteran the benefit of the doubt, he was exposed to herbicides during his active duty service in Thailand during the Vietnam War era.

2. The Veteran’s prostate cancer was incurred as a result of active military service.

CONCLUSION OF LAW

The criteria for entitlement to service connection for prostate cancer have been met. 38 U.S.C. §§ 1101, 1110, 1112, 1113, 1131, 1137 (2012); 38 C.F.R. §§ 3.102, 3.303, 3.304, 3.307, 3.309.

REASONS AND BASES FOR FINDINGS AND CONCLUSION

The Veteran served on active duty from June 1958 to March 1981.

A rating decision was issued under the legacy system in January 2019 and the Veteran submitted a timely notice of disagreement (NOD) in March 2019. In January 2020, the agency of original jurisdiction (AOJ) issued a statement of the case (SOC). The Veteran opted the claims into the modernized review system, also known as the Appeals Modernization Act (AMA), by submitting a February 2020 VA Form 10182, Decision Review Request: Board Appeal, identifying the January 2020 SOC. Therefore, the January 2020 SOC is the decision on appeal. In the February 2020 VA Form 10182, Decision Review Request: Board Appeal, the Veteran elected the Evidence Submission docket. Therefore, the Board may only consider the evidence of record at the time of the AOJ decision on appeal, as well as any evidence submitted by the Veteran [or his representative] within 90 days from receipt of, the February 2020 VA Form 10182. 38 C.F.R. § 20.303.

This appeal has been advanced on the Board’s docket pursuant to 38 C.F.R. § 20.900(c). 38 U.S.C. § 7107(a)(2) (2012).

1. Entitlement to service connection for prostate cancer, to include due to herbicide exposure

Service connection may be established for disability resulting from personal injury suffered or disease contracted in line of duty in the active military, naval, or air service. 38 U.S.C. §§ 1110, 1131. Establishing service connection generally requires (1) evidence of a current disability; (2) evidence of in-service incurrence or aggravation of a disease or injury; and (3) evidence of a nexus between the claimed in-service disease or injury and the present disability. Shedden v. Principi, 381 F.3d 1163, 1167 (Fed. Cir. 2004); see also Caluza v. Brown, 7 Vet. App. 498, 506 (1995), aff’d per curiam, 78 F.3d 604 (Fed. Cir. 1996) (table); 38 C.F.R. § 3.303. 

In addition, for Veterans who have served 90 days or more of active service during a war period or after December 31, 1946, certain chronic disabilities, including malignant tumors, are presumed to have been incurred in service if they manifested to a compensable degree within one year of separation from service. 38 U.S.C. §§ 1101, 1112, 1113, 1131, 1137; 38 C.F.R. §§ 3.307, 3.309.

That an injury or disease occurred in service is not enough; there must be chronic disability resulting from that injury or disease. If there is no showing of a resulting chronic condition during service, then a showing of continuity of symptomatology after service is required to support a finding of chronicity. 38 C.F.R. §§ 3.303(b), 3.309; Walker v. Shinseki, 708 F.3d 1331 (Fed. Cir. 2013). As noted, malignant tumors are chronic diseases. 38 U.S.C. § 1101. Therefore, section 3.303(b) is potentially applicable.

Service connection may also be granted for any injury or disease diagnosed after discharge, when all the evidence, including that pertinent to service, establishes that the disease or injury was incurred in service. 38 C.F.R. § 3.303(d). 

Veterans who during active service served in the Republic of Vietnam during the period beginning on January 9, 1962, and ending on May 7, 1975, shall be presumed to have been exposed to an herbicide agent, unless there is affirmative evidence of non-exposure. 38 U.S.C. § 1116; 38 C.F.R. § 3.307.

VA has interpreted that regulation to mean that the presumption of service connection applies to those service members who physically set foot in the Republic of Vietnam. See Haas v. Peake, 544 F.3d 1306, 1308 (Fed. Cir. 2008). However, VA has also adopted a procedure for verifying exposure to herbicide agents in Thailand during the Vietnam Era. Most service members in Thailand during the Vietnam Era were stationed at the Royal Thai Air Force Bases (RTAFBs) of U-Tapao, Ubon, Nakhon Phanom, Udorn, Takhli, Korat, and Don Muang. If a veteran served on one of those air bases between February 28, 1961 and May 7, 1975 as a security policeman, security patrol dog handler, member of a security police squadron, or otherwise served near the air base perimeter, as shown by his military occupational specialty (MOS), performance evaluations, or other credible evidence, then herbicide exposure should be conceded on a facts-found or direct basis. 

If the Veteran served at a U.S. Army base in Thailand in a military police occupational specialty, or in a military police unit, then herbicide exposure should be accorded on a facts-found or direct basis if the Veteran credibly stated that his duties placed him at or near the base perimeter. In all other scenarios, VA has adopted additional procedure for verifying exposure to herbicide agents in Thailand during the Vietnam Era.

If a veteran was exposed to a herbicide agent (to include Agent Orange) during active military, naval or air service and has contracted an enumerated disease to a degree of 10 percent or more at any time after service (except for chloracne and early-onset peripheral neuropathy which must be manifested within a year of the last exposure to an herbicide agent during service), the veteran is entitled to a presumption of service connection even though there is no record of such disease during service. 38 U.S.C. § 1112; 38 C.F.R. §§ 3.307, 3.309(e). 

The enumerated diseases include prostate cancer. 38 U.S.C. § 1116; 38 C.F.R. §§ 3.307(a)(6)(iii), 3.309(e), 3.313, 3.318. VA has determined there is no positive association between exposure to herbicides and any other condition for which the Secretary has not specifically determined that a presumption of service connection is warranted. See Notice, 68 Fed. Reg. 27630 -27641 (2003). 

Notwithstanding the above, regulations also provide that service connection may be granted for any disease diagnosed after discharge, when all evidence, including that pertinent to service, establishes that the disability was incurred in service. 38 C.F.R. § 3.303(d); see also Combee v. Brown, 34 F.3d 1039 (Fed. Cir. 1994). In other words, a presumption of service connection provided by law is not the sole method for showing causation in establishing a claim for service connection for disability due to herbicide exposure. See Stefl v. Nicholson, 21 Vet. App. 120 (2007) (holding that the availability of presumptive service connection for some conditions based on exposure to Agent Orange does not preclude direct service connection for other conditions based on exposure to Agent Orange). 

When there is an approximate balance of positive and negative evidence regarding any issue material to the determination of a matter, the VA shall give the benefit of the doubt to the claimant. 38 U.S.C. § 5107(b).

Service personnel records show that the Veteran was stationed at Ramasun Station, Thailand from November 1972 to December 1973. His military specialty was Morse Systems Supervisor. He supervised radio activity of a designated number of positions; planned and scheduled workloads and duty assignments; maintained current status of tasks being accomplished at each assigned position; monitored and assisted operators; and performed administrative duties, including maintenance of OJT and continued training records. In addition, he monitored the overall effectiveness of the mission; coordinated mission assignments between local facilities; maintained records of mission fulfillment, local evaluations and a current recapitulations of assignments; directly supervised Morse systems, radiotelephone and special identification techniques controllers; and, ensured the cleanliness of the operations area and other duties as directed by the Flight Commander. 

Service treatment records contain no documentation of complaints of or treatment for prostate cancer.

The October 2018 VA Prostate Cancer examination report confirms that the Veteran has prostate cancer.

The Veteran reported that he was assigned to the 6924th Security Squadron, a tenant organization to the Army 7th Radio Research Station at Ramasun Station, Thailand. He reported his official duties as Morse Intercept Operator were varied and included physically inspecting the antennae to ensure they were clear of any obstructions that may have appeared or been placed there since the last inspection. Of particular importance was to ensure the antennae area was free of small explosive devices that could be hidden in the dense foliage surrounding the antennae. He reported the foliage was routinely sprayed with defoliants and closely monitored. 

Affording him the benefit of the doubt, the Board finds that Veteran was exposed to herbicides while serving in Thailand during the Vietnam War. Specifically, while the Veteran’s MOS was not that of a military police occupational specialty, or a military police unit at Ramasun Station, Thailand, he has submitted evidence indicating that he was responsible for physically inspecting the antennae, to ensure they were clear of any obstructions, which were located in dense foliage near the perimeter of Ramasun Station and routinely sprayed with defoliants/herbicide agents. The Veteran’s credible statements are consistent with the places, duties, and circumstances of his military service. 

As the Veteran is presumed to have been exposed to an herbicide agent during his service in Thailand during the Vietnam War era, service connection for prostate cancer is warranted. 

The Board expresses no opinion regarding the severity of the disorder. The RO will assign an appropriate disability rating on receipt of this decision. Ferenc v. Nicholson, 20 Vet. App. 58 (2006) (discussing the distinction in the terms “compensation,” “rating,” and “service connection” as although related, each having a distinct meaning as specified by Congress).

REASONS FOR REMAND

1. The issue of service connection for bladder cancer, to include due to herbicide exposure is remanded.

2. The issue of service connection for urothelial cancer, to include claimed secondary to prostate cancer is remanded.

The matters are REMANDED for the following action:

1. BACKGROUND FOR THE RO ADJUDICATOR: 

The Veteran contends that his bladder cancer onset was due to herbicide exposure incurred during his period of service. He asserts that he has urothelial cancer that was caused or aggravated by his prostate cancer. 

The evidence is insufficient for determining whether service connection may be granted. 

Remand is required to correct a duty to assist error and to afford the Veteran VA examination to determine whether his bladder cancer had onset due to herbicide exposure incurred during service. See Combee v. Brown, 34 F.3d 1039 (Fed. Cir. 1994); see also Stefl v. Nicholson, 21 Vet. App. 120 (2007). 

The Veteran submitted evidence during the applicable evidence-intake period which substantiated his exposure to herbicide. Given that evidence, remand is also required to afford the Veteran a VA examination to determine whether he has current urothelial cancer that was caused or aggravated by a service-connected disability. See McLendon v. Nicholson, 20 Vet. App. 79, 83 (2006); see also Jandreau v. Nicholson, 492 F. 3d 1372 (Fed. Cir. 2007).

2. Schedule the Veteran for a VA examination to determine the nature and likely etiology of the claimed bladder cancer. The VBMS file must be reviewed by the examiner. All indicated tests and studies should be performed and the clinical findings should be reported in detail. 

A comprehensive clinical history should be obtained, to include a discussion of the Veteran’s documented medical history and assertions – he asserts that his bladder cancer onset due to herbicide exposure incurred during his period of service. After reviewing the entire record, the examiner should provide an opinion with supporting explanations as to the following: 

Did the Veteran’s bladder cancer have onset due to herbicide exposure incurred during his period of service?

As indicated above, the examiner must review the record in conjunction with rendering the requested opinion; however, his attention is drawn to the following:

*A January 2018 private oncology treatment record documents diagnosis of Stage II bladder cancer that was initially diagnosed in October 2017. 

*June 2018 Operation Report reflects the Veteran underwent radical cystoprostatectomy; bilateral pelvic lymphadenectomy; and, ileal conduit urinary diversion. 

A thorough explanation must be provided for the opinion rendered. If the examiner cannot provide the requested opinion without resorting to speculation, he or she should expressly indicate this and provide a supporting rationale as to why an opinion cannot be made without resorting to speculation.

THE EXAMINER IS ADVISED THAT BY LAW, THE MERE STATEMENT THAT THE CLAIMS FOLDER WAS REVIEWED AND/OR THE EXAMINER HAS EXPERTISE IS NOT SUFFICIENT TO FIND THAT THE EXAMINATION IS SUFFICIENT. 

3. Schedule the Veteran for a VA examination to determine the nature and likely etiology of the claimed urothelial cancer. The VBMS file must be reviewed by the examiner. All indicated tests and studies should be performed and the clinical findings should be reported in detail. 

A comprehensive clinical history should be obtained, to include a discussion of the Veteran’s documented medical history and assertions – he asserts that he has urothelial cancer that onset during his period of service due to herbicide exposure incurred therein or in the alternative was caused or aggravated by the now service-connected prostate cancer. After reviewing the entire record, the examiner should provide an opinion with supporting explanations as to the following: 

A) Does the Veteran have urothelial cancer that had onset during his period of service due to herbicide exposure incurred therein?

B) Was any current urothelial cancer CAUSED or AGGRAVATED (worsened) by service-connected prostate cancer (i.e., did the Veteran’s urothelial cancer onset due to the service-connected prostate cancer or was there an increase in the severity of the urothelial cancer because of the service-connected prostate cancer?

If aggravation of urothelial cancer by a service-connected prostate cancer is shown, the examiner should objectively quantify, to the extent possible, the degree of aggravation beyond the level of impairment had no aggravation occurred

As indicated above, the examiner must review the record in conjunction with rendering the requested opinion; however, his attention is drawn to the following:

*A January 2018 private treatment record documents diagnosis of high-grade urothelial carcinoma, invasive into muscularis propria.

* June 2018 Operation Report reflects the Veteran underwent radical cystoprostatectomy; bilateral pelvic lymphadenectomy; and, ileal conduit urinary diversion. 

A thorough explanation must be provided for the opinion rendered. If the examiner cannot provide the requested opinion without resorting to speculation, he or she should expressly indicate this and provide a supporting rationale as to why an opinion cannot be made without resorting to speculation.

THE EXAMINER IS ADVISED THAT BY LAW, THE MERE STATEMENT THAT THE CLAIMS FOLDER WAS REVIEWED AND/OR THE EXAMINER HAS EXPERTISE IS NOT SUFFICIENT TO FIND THAT THE EXAMINATION IS SUFFICIENT. 

 

 

Vito A. Clementi

Veterans Law Judge

Board of Veterans’ Appeals

Attorney for the Board G. Jackson

The Board’s decision in this case is binding only with respect to the instant matter decided. This decision is not precedential and does not establish VA policies or interpretations of general applicability. 38 C.F.R. § 20.1303.